**HOFFMAN–LA ROCHE INC.
and Syntex (U.S.A.) Inc.,
Plaintiffs,**

v.

**GENPHARM INC., Defendant.**

**No. CIV. 98–1124(WHW).**

United States District Court,
D. New Jersey.

June 8, 1999.

---

John C. Vassil, Morgan & Finnegan, L.L.P., New York City, David Fernandez, Gibbons, Del Deo, Dolan, Griffinger & Vecchione, PC, Newark, NJ, for Plaintiffs Hoffman–La Roche Inc. and Syntex (U.S.A.) Inc.

Edgar H. Huang, Frommer Lawrence & Haug LLP, New York City, Frederick L. Whitmer, Pitney, Hardin, Kipp & Szuch, Morristown, NJ, for Defendant Genpharm Inc.

## OPINION

WALLS, District Judge.

This matter comes before the Court on the motions of plaintiffs Hoffman–La Roche Inc. ("Roche") and Syntex (U.S.A.) Inc. ("Syntex") to voluntarily dismiss their complaint against defendant Genpharm Inc. ("Genpharm") without prejudice and to dismiss Genpharm's counterclaims against them for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted. Genpharm moves for an award of expenses incurred in defending this action and for summary judgment on its third counterclaim. Pursuant to Fed. R. Civ.P. 78, the Court decides these motions without oral argument. Plaintiffs' complaint is dismissed with prejudice. Plaintiffs' motion to dismiss Genpharm's counterclaims is granted in part and denied in part. Defendant's motion for an award of expenses is denied without prejudice to renew. Defendant's cross-motion for summary judgment on its third counterclaim is denied.

## FACTS

Plaintiffs Roche and Syntex manufacture and distribute pharmaceutical products. Roche is a New Jersey corporation with its principal place of business in Nutley, New Jersey, and Syntex a Delaware corporation with its principal place of business in Palo Alto, California. Genpharm, a Canadian corporation with its principal place of business in Etobicoke, Ontario, is engaged primarily in the manufacture in Canada and sale in various countries of generic pharmaceutical products that sometimes have brand-name counterparts. This Court exercises jurisdiction over this action under the patent laws, 28 U.S.C. § 1338(a), the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

Syntex owns a number of patents pertaining to the composition and synthesis of ticlopidine hydrochloride, a blood platelet aggregation inhibitor. These Syntex patents include patent number 4,906,756 (" '756") issued March 6, 1990, patent number 4,997,945 (" '945") issued March 5, 1991, patent number 5,068,360 (" '360") issued November 26, 1991, patent number 5,191,090 (" '090") issued March 2, 1993, patent number 5,342,953 (" '953") issued August 30, 1994, and patent number 5,516,-910 (" '910") issued May 14, 1996. Roche is the exclusive distributor of the TICLID brand of ticlopidine hydrochloride under the Syntex patents. Genpharm and a number of other manufacturers of generic pharmaceutical products each are seeking, by filing an Abbreviated New Drug Application ("ANDA"), approval from the Food and Drug Administration ("FDA") to market tablets which contain ticlopidine hydrochloride. In its application, pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV), Genpharm certified that it would not infringe plaintiffs' patent number 4,591,592 (" '592"), the patent listed by plaintiffs pertaining to ticlopidine hydrochloride in the FDA publication entitled "Approved Drug Products with Therapeutic Equivalence Evaluations," commonly known as the "Orange Book." The "Orange Book" is the FDA's publication that lists approved drug products and the patent information supplied by a drug manufacturer when filing a New Drug Application ("NDA"). See 21 U.S.C. § 355(j)(7).

On March 18, 1998, Roche and Syntex filed this action against Genpharm and seven other generic pharmaceutical manufacturers alleging that the process by which those manufacturers prepared the ticlopidine hydrochloride infringed the '756, '945, '360, '090, '953, and '910 Syntex patents. On April 2, 1998, plaintiffs filed a first amended complaint which withdrew their claims related to the '756 and '945 patents. Before the seven generic pharmaceutical manufacturers other than Genpharm filed their Answers, they provided information to plaintiffs which demonstrated that the ticlopidine hydrochloride in their respective products was made by a process outside the scope of the Syntex patents. Roche and Syntex voluntarily dismissed their amended complaint without prejudice as to those seven manufacturers pursuant to Fed.R.Civ.P. 41(a)(1). On June 19, 1998, Genpharm filed an amended answer to plaintiffs' amended complaint and counterclaims. Through its five counterclaims, Genpharm seeks (1) a declaratory judgment of non-infringement with regard to the '360, '090,-'953, and '910 Syntex patents, (2) a declaratory judgment of non-infringement as to two expired patents, the '756 and '945 patents, which were asserted in plaintiffs' original complaint but not in the amended complaint, (3) a declaratory judgment of non-infringement of the '592 patent, (4) a declaration of unenforceability of the six patents initially asserted in plaintiffs' original complaint due to plaintiffs' alleged bad faith and filing of sham litigation for anti-competitive purposes, and (5) treble damages for plaintiff's initiation of this litigation in bad faith and for anti-competitive purposes.

Through discovery, plaintiffs claim that they have learned that Genpharm's process for producing ticlopidine hydrochlo-

ride is outside the scope of the '360, '090,- '953, and '910 Syntex process patents. Plaintiffs now move to voluntarily dismiss their complaint without prejudice against Genpharm pursuant to Fed.R.Civ.P. 41(a)(2). Plaintiffs also move to dismiss Genpharm's first and third counterclaims for lack of subject matter jurisdiction, the second counterclaim pursuant to a stipulation by the parties, and the fourth and fifth counterclaims for failure to state a claim upon which relief may be granted. Genpharm argues that plaintiffs' voluntary dismissal of their complaint should be with prejudice. Genpharm has agreed to dismiss its first counterclaim only if plaintiffs' complaint is dismissed with prejudice. Genpharm contends that its second counterclaim should not be dismissed because the parties are still negotiating the stipulation and there is a continuing controversy over that claim. As to the fourth and fifth counterclaims, Genpharm argues that they state claims upon which relief may be granted. Finally, Genpharm moves for summary judgment on its third counterclaim for a declaration of non-infringement of the '592 patent.

## DISCUSSION

### A. Plaintiffs' Motion to Voluntarily Dismiss Their Complaint Without Prejudice

Pursuant to Fed.R.Civ.P. 41(a)(2), a plaintiff may not dismiss an action against a defendant after that defendant has filed an answer except by a stipulation of all parties or by order of the court. "If a counterclaim has been pleaded by a defendant prior to the service upon the defendant of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court." Fed. R.Civ.P. 41(a)(2). Rule 41(a)(2) also provides that "[u]nless otherwise specified in the order, a dismissal under this paragraph is without prejudice." Fed.R.Civ.P. 41(a)(2).

Here, Genpharm has filed an answer and counterclaims. Genpharm does not object to the dismissal of plaintiffs' complaint. The point of contention between the parties is whether the dismissal should be with or without prejudice. Plaintiffs argue that the dismissal should be without prejudice to enable them to bring an action later if Genpharm changes its process so as to infringe the Syntex patents. Genpharm insists that plaintiffs' complaint be dismissed with prejudice to definitively end the case and controversy over the four patents asserted in the amended complaint. Genpharm further asserts that the complaint should not be dismissed unless the Court retains supplemental jurisdiction over the state law claims in its fourth and fifth counterclaims.

Pursuant to Fed.R.Civ.P. 41(a)(2), this Court cannot dismiss plaintiffs' action against Genpharm unless Genpharm's counterclaims can remain pending for independent adjudication by the court. The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Genpharm's first three counterclaims under the patent laws, 28 U.S.C. § 1338 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. It has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Genpharm's fourth counterclaim under the Sherman Act 15 U.S.C. § 2. The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Genpharm's state law claims in its fourth and fifth counterclaims. Notwithstanding the dismissal of plaintiffs' complaint, this Court will retain jurisdiction over defendant's counterclaims.

Dismissal on a motion under Rule 41(a)(2) is within the sound discretion of the court. See *Ockert v. Union Barge Line Corp.*, 190 F.2d 303 (3d Cir.1951). Generally, dismissal is allowed "unless the defendant will suffer some plain legal prejudice other than the mere prospect of a second lawsuit." 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2364 (1971); *see Westing-*

*house Elec. Corp. v. United Elec. Radio & Mach. Workers of America,* 194 F.2d 770, 771 (3d Cir.), *cert. denied* 343 U.S. 966, 72 S.Ct. 1060, 96 L.Ed. 1362 (1952). Here, the parties do not dispute that the complaint should be dismissed. Because Genpharm will not be prejudiced by the dismissal of plaintiffs' complaint and the parties agree that the complaint should be dismissed, the Court will dismiss plaintiffs' complaint.

■ The parties disagree whether the dismissal should be with or without prejudice. Genpharm argues that the complaint should be dismissed with prejudice in order to definitively end the litigation. Generally, a dismissal under Rule 41(a)(2) is without prejudice. Fed.R.Civ.P. 41(a)(2). A dismissal with prejudice may be granted "where it would be inequitable or prejudicial to defendant to allow plaintiff to refile the action." *Chodorow v. Roswick,* 160 F.R.D. 522, 523 (E.D.Pa.1995). "The prejudice to defendant must be something other than the mere prospect of a second lawsuit." *Chodorow,* 160 F.R.D. at 523 (citing *Miller v. Trans World Airlines, Inc.,* 103 F.R.D. 20, 21 (E.D.Pa.1984)). Here, plaintiffs have admitted that Genpharm's process of manufacturing ticlopidine hydrochloride does not infringe upon the '360, '090, '953, or '910 Syntex process patents. After such an admission at this stage in the litigation, it would be inequitable to give plaintiffs the opportunity to refile this action. If Genpharm alters its process in such a way that it comes within the scope of the Syntex process patents, Roche and Syntex may bring an infringement action at that time. This dismissal does not affect plaintiffs' rights to bring such future actions. Plaintiffs' complaint is dismissed with prejudice.

## B. Genpharm's Motion for an Award of Expenses

Genpharm contends that the Court should award it the expenses it incurred in defending this action because it was a baseless suit. As discussed below, whether this action is objectively baseless re-mains to be seen. Genpharm's motion is denied without prejudice to renew.

## C. Plaintiffs' Motion to Dismiss Defendant's Counterclaims for Lack of Subject Matter Jurisdiction

### 1. Standard for a Rule 12(b)(1) Motion to Dismiss

■ Unlike a motion to dismiss for failure to state a claim pursuant to Fed. R.Civ.P. 12(b)(6), in a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), no presumption of truthfulness attaches to the allegations in the complaint, or in this case the counterclaims, and the court may consider matters outside the pleadings such as affidavits and other material properly before the court. *Mortensen v. First Federal Savings & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977). In a Rule 12(b)(1) motion, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen,* 549 F.2d at 891. "[T]he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Mortensen,* 549 F.2d at 891. In the case of a counterclaim, the counterclaimant bears this burden. The claimant must not only demonstrate that a controversy existed at the time it filed suit but that it continues to exist throughout the litigation. *Spectronics Corp. v. H.B. Fuller Co.,* 940 F.2d 631, 635 (Fed.Cir.1991). A motion to dismiss for lack of subject matter jurisdiction predicated on the legal insufficiency of a claim may be granted if the claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or ... is wholly insubstantial and frivolous." *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1408–09 (3d Cir.), *cert. denied,* 501 U.S. 1222, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991)(quoting *Bell v. Hood,* 327 U.S. 678, 683, 66 S.Ct. 773, 90 L.Ed. 939 (1946)).

**2. Plaintiffs' Motion to Dismiss Defendant's First Counterclaim for Lack of Subject Matter Jurisdiction**

Plaintiffs move to dismiss defendant's first counterclaim, which seeks a declaration of non-infringement of the '360, '090,- '953, and '910 patents, for lack of subject matter jurisdiction pursuant to Fed. R.Civ.P. 12(b)(1). Genpharm has agreed to the dismissal of this counterclaim provided that plaintiffs' complaint is dismissed with prejudice. Because plaintiffs' complaint has been dismissed with prejudice, there is no case or controversy as to the non-infringement of the '360, '090, '953, and '910 patents. Genpharm's first counterclaim is dismissed for lack of subject matter jurisdiction.

**3. Plaintiffs' Motion to Dismiss Defendant's Second Counterclaim Pursuant to Stipulation by the Parties under Fed.R.Civ.P. 41(a)(1)**

In its second counterclaim, Genpharm seeks a declaratory judgment of non-infringement of the '756 and '945 patents, two Syntex patents which expired under the patent statute for failure to pay the requisite maintenance fees. These patents were asserted in plaintiffs' original complaint but not in the amended complaint. Plaintiffs move to dismiss this counterclaim because the parties have agreed to settle it through a stipulation of dismissal. Plaintiffs assert that they have drafted a release of liability and stipulation of dismissal but that Genpharm has refused to execute them. Plaintiffs request that the Court order Genpharm to execute the release and stipulation of dismissal. Genpharm maintains that there is a continuing case and controversy over these two patents because the parties "have been unable to agree on language for guarantees that should the patents be revived by delayed payment of maintenance fees under 21 C.F.R. § 1.378, the patents cannot be asserted against Genpharm." (Genpharm's Opp. to Roche's Motion to Dismiss its First Am. Compl. at 10.) Plaintiffs assert

that they have executed a release which incorporates all of the language Genpharm requested and that they have executed the stipulation of dismissal drafted by Genpharm. Plaintiffs added a paragraph to the release drafted by Genpharm, and according to plaintiffs, Genpharm will not execute the release until this paragraph is removed. This paragraph reads:

> Nothing in this Release shall be construed as an admission by Roche or Syntex that a) a Release is needed to dismiss the Second Counterclaim or b) Roche or Syntex are accusing or threatening Genpharm or its related and affiliated companies with infringement of United States Patent Nos. 4,906,756 and 4,997,945 or c) a release is needed or acceptable for resolution of any other Counterclaim. (Release ¶ 2.)

Plaintiffs contend that this paragraph "in no way undercuts the operative portions of the release to Genpharm of liability under the expired patents which is set forth in the first paragraph." (Pls.' Mem. In Supp. of Mot. to Dismiss First Am. Compl. at 7.) Plaintiffs assert that because they have already agreed that the patents are expired and that even if they revive the patents they will never bring an infringement action against Genpharm as to those patents, there is no controversy remaining as to the '756 and '945 patents.

This Court cannot order Genpharm to execute the stipulation of dismissal and release and settle the dispute over these patents. A stipulation of dismissal pursuant to Fed.R.Civ.P. 41(a)(1) must be voluntary. Genpharm has not yet stipulated to dismissal of its second counterclaim, and the Court cannot and will not order it to do so.

Next, the Court must determine whether a controversy remains as to the '756 and '945 patents. In order for this Court to have jurisdiction over a declaratory judgment action, there must be an actual controversy. 28 U.S.C. § 2201(a). The Federal Circuit has set forth a twoprong test to determine wheth-

er an actual case or controversy exists when a party seeks a declaratory judgment of patent non-infringement or invalidity. First, the conduct of the patent-holder must have created a reasonable apprehension on the part of the party seeking declaratory judgment that it will face an infringement suit. *BP Chemicals Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 978 (Fed.Cir.1993). Second, the party seeking declaratory judgment must be engaged in "present activity which could constitute infringement" or have taken "concrete steps ... with the intent to conduct such activity." *BP Chemicals*, 4 F.3d at 977. The first prong looks to the conduct of the patent holder and the second to that of the party seeking declaratory judgment. *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed.Cir.1988).

Applying the Federal Circuit's test to determine whether there is an actual case or controversy as to the '756 and '945 patents, the Court finds that there is an existing controversy as to these patents. Plaintiffs have engaged in conduct which has created a reasonable apprehension on the part of Genpharm that it will face an infringement suit for these two patents. Although plaintiffs did not assert the '756 and '945 patents in their amended complaint, they had asserted those patents in their original complaint. Plaintiffs have admitted by way of a stipulation and a release that these patents are expired, and in consideration of Genpharm's stipulated dismissal of its second counterclaim, they have agreed that even if they revive the '756 and '945 patents, they will not bring any infringement actions against Genpharm for those patents. However, because Genpharm has not executed either the stipulation of dismissal or the release, neither has gone into effect. Because neither the stipulation of dismissal nor the release has been executed or have gone into effect, Genpharm still has a reasonable apprehension that it will face a suit for infringement of the '756 and '945 patents; the controversy over these two patents remains. Because Genpharm has not stipulated to the dismissal of its second

counterclaim and because an actual controversy exists as to the '756 and '945 patents, plaintiffs' motion to dismiss Genpharm's second counterclaim is denied.

### 4. Plaintiffs' Motion to Dismiss Genpharm's Third Counterclaim for Lack of Subject Matter Jurisdiction

Plaintiffs move to dismiss Genpharm's third counterclaim for a declaration of non-infringement of the '592 patent for lack of subject matter jurisdiction because there is no actual case or controversy as to this patent. Plaintiffs argue that Genpharm has no reasonable basis for believing that it faces a lawsuit for infringement of the '592 patent. Plaintiffs contend that they have never asserted or threatened to assert a claim against Genpharm with respect to the '592 patent. According to plaintiffs, an August 31, 1998 letter from Roche to Genpharm removed any apprehension Genpharm may have had of an infringement suit as to the '592 patent. In that letter, Roche stated,

> Based on the information that your company provided us, we [Hoffman–La Roche Inc. and Syntex (U.S.A.) Inc.] are of the opinion that the formulation used in your ticlopidine hydrochloride tablets does not infringe [the '592 patent], either literally or under the doctrine of equivalents. We have not made and will not make any claim of patent infringement based on the sale of ticlopidine hydrochloride tablets having the formulation that you disclosed to us.

(Vassil Declaration Ex. A.)

Genpharm argues that it has a reasonable apprehension of suit on the '592 patent by plaintiffs based upon earlier communications between its counsel and counsel for Roche, whereby the two parties were negotiating to allow Roche access to confidential Genpharm technical information in order to determine whether the '592 patent was infringed. Plaintiffs' infringement suit as to six other patents "has left hanging the issue of in-

fringement of the ['592] patent." (Am. Compl.¶ 69.) Genpharm also contends that it has a reasonable apprehension of suit because the "Canadian counterpart to the ['592] patent is currently being asserted by one or more of the plaintiffs against Genpharm in Canada on the same formulation." (Id.) Genpharm argues that plaintiffs have shown a continuing interest in asserting the '592 patent against it through a March 25, 1998 letter regarding a non-disclosure agreement, discovery requests, and their rejection of a judicially binding undertaking that Genpharm has not infringed the '592 patent. (Def.'s Opp. to Pls.' Mot. to Dismiss Def.'s Third Counterclaim at 3.) Genpharm contends that plaintiffs' assurances not to bring an infringement action against it as to the '592 patent are hollow because they have no basis. In their August 31, 1998 letter, plaintiffs state that based upon information Genpharm had provided, they had concluded that Genpharm's formulation for its ticlopidine hydrochloride tablets did not infringe the '592 patent. However, according to Genpharm, at the time the letter was written, plaintiffs had not seen Genpharm's formulation for its ticlopidine hydrochloride tablets. Genpharm argues that the only information it had provided to plaintiffs about its ticlopidine hydrochloride tablets was contained in its February 12, 1998 Notice of Certification required by 21 U.S.C. § 355(j)(2)(A)(vii)(IV), and that the Notice of Certification did not disclose Genpharm's formulation for its tablets. (Def.'s Opp. to Pls.' Mot. to Dismiss Def.'s Third Counterclaim at 12.) Genpharm contends that because plaintiffs had no more information at the time the letter was written then they had earlier when they stated that they had insufficient information for an infringement evaluation, the August 31, 1998 letter does not remove its reasonable apprehension of an infringement suit on the '592 patent.

Plaintiffs counter that in both their August 31, 1998 letter and in their moving papers filed in this Court, they have stated that they have no intention of suing Genpharm on the '592 patent. With regard to the proceeding initiated by Hoffman–La Roche, Ltd. (a related Canadian company of plaintiff Roche) in the Federal Court of Canada against the Minister of National Health and Welfare and Genpharm, plaintiffs maintain that it is not an infringement action. Rather, it is an administrative proceeding which seeks to deny Genpharm's abbreviated new drug submission for ticlopidine tablets because Genpharm's letter to Hoffman–La Roche Ltd. (analogous to a certification of non-infringement pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV)) was deficient under the Canadian Patent Medicines (Notice of Compliance) Regulations. Plaintiffs assert that their March 25, 1998 letter requested no information relevant to the '592 patent; rather, it addressed a non-disclosure agreement to facilitate an exchange of earlier requested information relevant to the Syntex process patents. Plaintiffs also argue that their discovery requests dealt with the Syntex process patents, not the '592 patent because they asked for information relevant to the process by which Genpharm's ticlopidine tablets were made, not the pharmaceutical composition of the tablets. (Pls.' Mem. in Supp. of Mot. to Dismiss Def.'s Third Counterclaim at 6.) As to the February 13, 1998 Notice of Certification of non-infringement, plaintiffs contend that it did disclose Genpharm's formulation for its ticlopidine hydrochloride tablets. In particular, the Notice of Certification states that:

The formulation contains, in addition to the active ingredient and other non-stabilizer components, ammonium chloride-an inorganic stabilizer with a pKa of 9.24. Genpharm's product does not contain any organic acid stabilizer; and it does not contain ascorbic acid, benzoic acid, citric acid, fumaric acid or tartaric acid specifically.

(Notice at 2, Def.'s Opp. to Pls.' Mot. to Dismiss Def.'s Third Counterclaim Ex. A at 2.)

All claims of the ['592] patent require the presence of an "organic acid" or "acidic compound" limited to one or more of the following five specific organic acids: ascorbic acid, benzoic acid, citric acid, fumaric acid or tartaric acid. Genpharm's product does not contain any of these acids. More broadly, the product does not contain any organic acid stabilizer.

(Notice at 5, Def.'s Opp. to Pls.' Mot. to Dismiss Def.'s Third Counterclaim Ex. A at 5.)

The inorganic stabilizer of the Genpharm product is not the equivalent of the organic acid stabilizers of the ['592] patent claims. More specifically, the stabilizer of the Genpharm product is not an organic acid and therefore is not the equivalent of the five organic acids specified in the claims. Additionally, the five specified organic acids have pKa's within the range of 2–6..., whereas the stabilizer of the Genpharm product has a pKa of 9.24–well outside of this range. Therefore, the inorganic stabilizer of the Genpharm product cannot be considered to be the equivalent of the specific organic acid stabilizers required by the claims.

(Notice at 6, Def.'s Opp. to Pls.' Mot. to Dismiss Def.'s Third Counterclaim Ex. A at 6.) Based upon this information, plaintiffs claim that they determined that Genpharm's ticlopidine hydrochloride tablets do not infringe the '592 patent and resolved not to make any claim of patent infringement against Genpharm as to the '592 patent. Plaintiffs argue that Genpharm has not met its burden of proof that it has a reasonable apprehension of suit as to the '592 patent and that an actual controversy exists.

Plaintiffs' arguments have merit. Genpharm has not demonstrated that plaintiffs' conduct has created a reasonable apprehension of an infringement suit as to the '592 patent. Plaintiffs' infringement suit relating to the Syntex patents does not indicate that plaintiffs intend to assert the '592 patent against Genpharm. The Canadian administrative proceeding brought by Hoffman–La Roche, Ltd. is not an infringement proceeding and also does not indicate an intention on the part of plaintiffs to assert the '592 patent against Genpharm. Contrary to Genpharm's assertions, plaintiffs' March 25, 1998 letter did not show a continuing interest in asserting the '592 patent against Genpharm. Although it did not specify to which patent(s) the previously requested information was relevant, it is not evidence of an intent to enforce the '592 patent. Plaintiffs' discovery requests did not betray any intention to assert the '592 patent because before Genpharm filed its Amended Answer and Counterclaims, plaintiffs limited their discovery requests to the names of Genpharm's manufacturer of ticlopidine hydrochloride and the process used by that manufacturer in its preparation. Because the '592 patent relates to the pharmaceutical composition containing ticlopidine hydrochloride and not the process for manufacturing the ticlopidine hydrochloride, the discovery requests did not relate to the '592 patent. Plaintiffs' August 31, 1998 letter which represented that Genpharm had not infringed the '592 patent and that plaintiffs would not bring an infringement action against Genpharm as to the '592 patent also quells any reasonable apprehension Genpharm may have had that it would face an infringement suit on that patent. The Court finds that plaintiffs were in a position to evaluate whether Genpharm's tablets infringed the '592 patent at the time the letter was written because Genpharm's February 13, 1998 Notice of Certification of non-infringement disclosed, at least in part, Genpharm's formulation for the tablets. Thus, plaintiffs' assurances in that letter were not hollow. Finally, plaintiffs' refusal of Genpharm's request for a judicially-binding undertaking that Genpharm did not infringe the '592 patent has little significance in light of plaintiffs' assurances that it would not bring an infringement action against Genpharm as to the '592 patent. Genpharm has not demonstrated that plaintiffs

have engaged in conduct which created in it a reasonable apprehension of suit on the '592 patent. Because no actual controversy exists relating to the infringement of the '592 patent, this Court does not have subject matter jurisdiction over Genpharm's third counterclaim. Genpharm's third counterclaim is dismissed.

### D. Plaintiffs' Motion to Dismiss Genpharm's Fourth and Fifth Counterclaims for Failure to State a Claim

#### 1. Standard for a Rule 12(b)(6) Motion to Dismiss

On a motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6), the court is required to accept as true all allegations in the complaint, and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. *See Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 (3d Cir.1994). The question is whether the claimant can prove any set of facts consistent with his/her allegations that will entitle him/her to relief, not whether that person will ultimately prevail. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept legal or unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegation. *See Miree v. DeKalb County, Ga.,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977). Moreover, the claimant must set forth sufficient information to outline the elements of his claims or to permit inferences to be drawn that these elements exist. See Fed.R.Civ.P. 8(a)(2); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). The Court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record. *See Pittsburgh v. West Penn Power Co.,* 147 F.3d 256, 259 (3d Cir.1998); see also 5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 at 299 (2d ed.1990).

#### 2. Plaintiffs' Motion to Dismiss Defendant's Fourth and Fifth Counterclaims

In its fourth counterclaim, Genpharm requests a declaration of unenforceability of the six patents asserted in the original complaint (the '360, '090, '953, '910, '756, and '945 patents) "due to the filing and prosecution in bad faith of objectively baseless litigation for the improper purpose of obtaining specific, highly confidential commercial intelligence." (Genpharm's Am. Answer & Counterclaims ¶ 73.) Genpharm claims that plaintiffs knowingly misrepresented in their complaint and amended complaint that they had given Genpharm timely actual notice of the six Syntex patents asserted in the complaint including the four Syntex patents asserted in the amended complaint. (Genpharm's Am. Answer & Counterclaims ¶ 105.) According to Genpharm, it only had notice of the '592 patent that was listed in the Orange Book. Genpharm contends that plaintiffs have misused the Syntex patents through a pattern of infringement suits against competitors whose products are clearly non-infringing. Because of plaintiffs' patent misuse, this Court should declare those patents unenforceable. Genpharm's fifth counterclaim requests treble damages for "plaintiffs' initiation of patent infringement litigation in bad faith for anticompetitive purposes" and an injunction to "enjoin plaintiffs from committing further unlawful acts." (Id. ¶¶ 113, 120.) Plaintiffs move to dismiss these counterclaims for failure to state a claim upon which relief may be granted. Plaintiffs maintain that these counterclaims are barred by the *Noerr–Pennington* doctrine—because they invoked judicial processes in good faith, they are immune from antitrust liability. Genpharm contends that because plaintiffs' suit was objectively baseless from the time it was initiated, the *Noerr–Pennington* doctrine is not applicable.

### a. Whether Genpharm has stated a claim for bad faith or objectively baseless litigation brought for anti-competitive purposes

Genpharm claims that Roche and Syntex brought this litigation in bad faith for anti-competitive purposes in violation of both federal and state law. Although Genpharm did not mention the Sherman Act or antitrust laws in its counterclaim, its fourth counterclaim is implicitly based on patent misuse in violation of the federal antitrust laws. Moreover, plaintiffs have moved to dismiss this counterclaim on the basis of immunity from antitrust liability and defendant has not denied that its fourth counterclaim alleges violations of the antitrust laws. The Court will therefore consider defendant's fourth counterclaim to be based on federal antitrust laws in addition to New Jersey state laws.

The Sherman Act subjects to antitrust liability "[e]very person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States...." 15 U.S.C. § 2. "Conduct prohibited under antitrust law includes bringing suit to enforce a patent with knowledge that the patent is invalid or not infringed, and the litigation is conducted for anti-competitive purposes." *C.R. Bard, Inc. v. M3 Systems, Inc.*, 157 F.3d 1340, 1368 (Fed.Cir.1998), *cert. denied,*—— U.S.——, 119 S.Ct. 1804, 143 L.Ed.2d 1008 (1999). "The bringing of a lawsuit to enforce legal rights does not of itself constitute violation of the antitrust laws or patent misuse; there must be bad faith and improper purpose in bringing the suit, in implementation of an illegal restraint of trade." *Glaverbel Societe Anonyme v. Northlake Marketing & Supply, Inc.*, 45 F.3d 1550, 1558 (Fed.Cir.1995). The Federal Circuit has stated that a "purpose is improper if its goal is not to win a favorable judgment, but to harass a competitor and deter others from competition, by engaging the litigation process itself, regard-less of the outcome." *Glaverbel*, 45 F.3d at 1558.

A patent grants a patentee a lawful monopoly over "the invention described in the claims of his patent." *Motion Picture Patents Co. v. Universal Film Mfg. Co.*, 243 U.S. 502, 511, 37 S.Ct. 416, 419, 61 L.Ed. 871 (1917). The monopoly is limited, however, to the "particular device described and claimed in the patent." *Morton Salt Co. v. G.S. Suppiger Co.*, 314 U.S. 488, 491–492, 62 S.Ct. 402, 404–405, 86 L.Ed. 363 (1942). Under the doctrine of patent misuse, if the patentee attempts to extend that monopoly beyond the scope of the patent, to use the patent as a tool to restrain trade in areas not claimed under the patent, the patentee may lose her right to seek redress through the judicial process to protect her lawful patent monopoly. See, e.g., *Morton Salt*, 314 U.S. at 491–492, 62 S.Ct. at 404–405 ("[a] patent affords no immunity for a monopoly not within the grant, and the use of it to suppress competition in the sale of an unpatented article may deprive the patentee of the aid of a court of equity to restrain an alleged infringement by one who is a competitor.") The doctrine of patent misuse is "an extension of the equitable doctrine of 'unclean hands' to the patent field." *United States Gypsum Co. v. National Gypsum Co.*, 352 U.S. 457, 465, 77 S.Ct. 490, 495, 1 L.Ed.2d 465 (1957).

Here, Genpharm has alleged that Roche and Syntex brought a baseless suit to enforce six patents, two of which are invalid and the rest of which are clearly not infringed, in bad faith and for anti-competitive purposes. Genpharm asserts that plaintiffs have engaged in a pattern of such litigation to improperly obtain proprietary commercial intelligence from their competitors concerning the sources of and the various processes for making ticlopidine hydrochloride in order to preserve their monopoly over the market for ticlopidine hydrochloride tablets. (Am. Compl.¶¶ 83–86.) In both this action and in a previous suit, after plaintiffs obtained

the proprietary information they sought, they voluntarily dismissed their claims. (Am. Compl. ¶ 81, Def.'s Opp. to Pls.' Mot. to Dismiss First Am. Compl. at 3.) Genpharm claims that at the time they filed suit, plaintiffs had no "reasonable basis to believe that Genpharm infringed or would infringe any of the six patents asserted," and that plaintiffs either had not conducted a reasonable pre-filing investigation or ignored the results of whatever investigation they did conduct. (Am.Comp.¶ 82.) According to Genpharm, plaintiffs knew or should have known at the time they filed their complaint, that "there was no reasonable objective basis" to allege that Genpharm had infringed or would infringe any of the Syntex process patents. (Am.Comp. ¶ 109.) Because Genpharm has alleged that plaintiffs initiated a baseless suit to enforce invalid patents and patents which they knew or should have known were not infringed for anti-competitive purposes to maintain a monopoly over the market for ticlopidine hydrochloride, Genpharm has stated a claim for patent misuse in violation of the Sherman Act, 15 U.S.C. § 2. See *C.R. Bard,* 157 F.3d at 1368; *Glaverbel,* 45 F.3d at 1558.

Roche and Syntex claim that Genpharm's fourth and fifth counterclaims are barred by the *Noerr–Pennington* doctrine which immunizes good-faith litigants from antitrust liability. Our Supreme Court has advised that a party who petitions the government for redress is generally immune from antitrust liability. *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mine Workers of Am. v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965) (the "Noerr–Pennington doctrine"). In *Noerr,* the Court first recognized that the "mere solicitation of government action with respect to the passage and enforcement of laws" is immune from antitrust liability. 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464. The Court then extended this immunity to those who "use the channels and procedures of state and federal agencies and courts to advocate their causes and points of view respecting resolution of their business and economic interests vis-a-vis their competitors." *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 510, 92 S.Ct. 609, 611, 30 L.Ed.2d 642 (1972). However, both in *Noerr* and in *California Motor Transport,* the Court withheld the immunity from "sham" activities and litigation because where the litigation or the political activity "is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor ... the application of the Sherman Act would be justified." *California Motor Transport,* 404 U.S. at 510, 92 S.Ct. 609, 611, 30 L.Ed.2d 642 (quoting *Noerr,* 365 U.S., at 144, 81 S.Ct., at 533). Thus, sham litigation is actionable under federal antitrust law.

In order for litigation to be considered a "sham," it must be "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 60, 113 S.Ct. 1920, 1928, 123 L.Ed.2d 611 (1993). "The existence of probable cause to institute legal proceedings precludes a finding that an antitrust defendant has engaged in sham litigation.... Probable cause to institute civil proceedings requires no more than a reasonable belief that there is a chance that a claim may be held valid upon adjudication." 508 U.S. at 62, 113 S.Ct. at 1920. If the litigation is objectively baseless, then the Court must examine the "litigant's subjective motivation" and determine "whether the baseless suit conceals 'an attempt to interfere directly with the business relationships of a competitor.'" *Professional Real Estate Investors,* 508 U.S. at 60, 113 S.Ct. at 1928 (quoting *Noerr,* 365 U.S. at 144, 81 S.Ct. at 533). After the defendant's claim to *Noerr* immunity has been disproved, a plaintiff must still prove a substantive antitrust violation. Where a litigant brings a suit for anti-competitive purposes to enforce a patent with the knowledge that the patent is invalid or not

infringed, the antitrust immunity of *Noerr–Pennington* and *California Motor Transp.* does not apply. *C.R. Bard, Inc.,* 157 F.3d at 1368.

■ Here, plaintiffs have admitted that Genpharm's process for producing ticlopidine hydrochloride is outside the scope of the '360, '090, '953, and '910 Syntex process patents. However, plaintiffs claim that at the time they filed suit against Genpharm, they had reason to believe that Genpharm's process for producing ticlopidine hydrochloride infringed the Syntex process patents. Although there is no basis in law for plaintiffs' claim that Genpharm infringed those patents, the question is whether a reasonable litigant could have realistically expected success on the merits at the time the suit was filed. Genpharm argues that if Roche and Syntex had undertaken a reasonable investigation, they would have realized that Genpharm's process is outside the scope of the Syntex process patents. The resolution of the question whether plaintiffs' suit is objectively baseless as to Genpharm involves the determination of whether plaintiffs undertook a reasonable investigation before filing suit, whether plaintiffs knew or should have known that Genpharm had not infringed the Syntex process patents, and whether a reasonable litigant could have realistically expected success on the merits at the time the suit was filed. Reasonableness is a question of fact, and the Court cannot make such factual determinations on a factual controversy roiled by a motion to dismiss. Plaintiffs' motion to dismiss Genpharm's fourth and fifth counterclaims on the basis of *Noerr–Pennington* immunity is denied.

### b. Whether Genpharm has stated a claim for unfair competition

Plaintiffs argue that Genpharm has failed to assert a claim for unfair competition under New Jersey state law. According to plaintiffs, unfair competition under New Jersey common law encompasses the tort of passing off one's goods or services as those of another and the tort of unprivileged imitation, and Genpharm has failed

to state a claim for either of these torts. Plaintiffs also contend that Genpharm has not asserted a claim under the New Jersey statute prohibiting unfair competition which makes it unlawful for any "merchant, firm or corporation [to] appropriate for his or their own use a name, brand, trademark, reputation or goodwill of any maker in whose product such merchant, firm or corporation deals." N.J. Stat. Ann. § 56:4–1. Genpharm counters that the New Jersey law of unfair competition is not limited to "passing off" or "unprivileged imitation" but also extends to baseless suits brought to harm a competitor.

■ The tort of unfair competition "consists of the misappropriation of one's property by another—property which has some sort of commercial or pecuniary value." *New Jersey Optometric Assn. v. Hillman–Kohan Eyeglasses, Inc.,* 144 N.J.Super. 411, 427–428, 365 A.2d 956, 965 (Ch.Div.1976)(citing 87 C.J.S. Trade–Marks, Trade–Names, and Unfair Competition § 13). This "misappropriation usually takes the form of 'palming off' or 'passing off' another's goods as [one's] own, although this modus operandi is not essential." *New Jersey Optometric Assn.,* 144 N.J.Super. at 428, 365 A.2d at 965 (citing *Columbia Broadcasting Sys., Inc. v. Melody Recordings, Inc.,* 134 N.J.Super. 368, 377–378, 341 A.2d 348). The key to the tort of unfair competition is misappropriation of property of commercial value.

[21] Here, Genpharm contends that plaintiffs' initiation of baseless litigation constitutes unfair competition. The initiation of baseless litigation alone does not entail the misappropriation of property of commercial value. Moreover, there is no authority for the proposition that bringing such litigation constitutes unfair competition. Genpharm relies on two cases for support, both of which are inapposite. In *Electric Boat Co. v. Lake Torpedo Boat Co.,* 215 F. 377, 386 (D.N.J.1914), the court stated by dicta that the bringing of baseless litigation may be a basis for a charge of unfair competition but granted the

plaintiffs' motion to strike the cause of action. In *Cheminor Drugs, Ltd. v. Ethyl Corp.*, 993 F.Supp. 271 (D.N.J.1998), *aff'd*, 168 F.3d 119 (3d Cir.1999), the court did not exercise supplemental jurisdiction over the unfair competition claim. However, Genpharm claims that plaintiffs initiated this litigation in order to obtain highly confidential business information from it which Genpharm alleges is of great value to plaintiffs. The misappropriation of a trade secret constitutes unfair competition under New Jersey law, and Genpharm has stated such a claim. Under New Jersey law, a trade secret is a "formula, process, device or compilation which one uses in his business and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Rohm and Haas Co. v. Adco Chem. Co.*, 689 F.2d 424, 431 (3d Cir.1982). The purported trade secret cannot be a matter of public knowledge or of general knowledge within the industry. *Rohm and Haas Co.*, 689 F.2d at 431. The proprietary information Genpharm alleges plaintiffs obtained through this litigation constitutes a trade secret, and Genpharm has stated a claim for its misappropriation. Genpharm has stated a claim for unfair competition because it has alleged the misappropriation of property of commercial value. Plaintiffs' motion to dismiss Genpharm's fifth counterclaim is denied.

## CONCLUSION

Plaintiffs' complaint is dismissed with prejudice. Plaintiffs' motion to dismiss Genpharm's first and third counterclaims for lack of subject matter jurisdiction is granted. Their motion to dismiss defendant's second, fourth, and fifth counterclaims is denied. Defendant's motion for an award of expenses is denied without prejudice to renew. Defendant's motion for summary judgment on the third count of its counterclaim is denied.

SO ORDERED.

## ORDER

This matter comes before the Court on the motion of plaintiffs Hoffman–La Roche

Inc. ("Roche") and Syntex (U.S.A.) Inc. ("Syntex") to voluntarily dismiss their complaint against defendant Genpharm Inc. ("Genpharm") without prejudice, their motion to dismiss Genpharm's counterclaim against them for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted, and Genpharm's motion for summary judgment on its third counterclaim. Upon consideration of the submissions of the parties and for the reasons stated in the accompanying opinion,

It is on this day of June, 1999:

ORDERED that plaintiffs' complaint is dismissed with prejudice;

ORDERED that plaintiffs' motion to dismiss defendant's first and third counterclaims is granted;

ORDERED that plaintiffs' motion to dismiss defendant's second, fourth, and fifth counterclaims is denied;

ORDERED that defendant's motion for an award of expenses is denied without prejudice to renew;

ORDERED that defendant's motion for summary judgment on its third counterclaim is denied.