BRISTOL–MYERS SQUIBB
COMPANY, Plaintiff,

v.

IMMUNEX CORPORATION, Zenith
Goldline Pharmaceuticals, Inc. and
Ivax Corporation, Defendants.

Zenith Goldline Pharmaceuticals, Inc.,
Ivax Corporation, and Baker Norton
Pharmaceuticals, Counterclaim Plain-
tiffs,

v.

Bristol–Myers Squibb Company,
Counterclaim Defendant.

Civil Action Nos. 97–6050 (WHW), 98–
159(WHW) and 98–1412 (WHW).

United States District Court,
D. New Jersey.

Feb. 29, 2000.

Gerson A. Zweifach, Sharon L. Davis,
Williams & Connolly, Washington, DC,
William L. Mentlik, Arnold H. Krumholz,
Paul H. Kochanski, Michael H. Teschner,
Lerner, David, Littenberg, Krumholz &
Mentlik, LLP, Westfield, NJ, Jay B. Sha-
piro, Stearns, Weaver Miller Weissler Al-
hadeff & Sitterson, P.A., Miami, FL, for
Counterclaimants Zenith Goldline Pharma-
ceuticals, Inc., IVAX Corporation, and
Baker Norton Pharmaceuticals.

Evan R. Chesler, Richard J. Stark, Cra-
vath, Swaine & Moore, New York City,
William J. O'Shaughnessy, McCarter &
English, LLP, Newark, NJ, Robert L.
Baechtold, Fitzpatrick, Cella, Harper &
Scinto, New York City, for Plaintiff–Coun-

terclaim Defendant Bristol–Myers Squibb Co.

## OPINION

WALLS, District Judge.

IVAX Corporation, Baker Norton Pharmaceuticals, Inc., and Zenith Goldline Pharmaceuticals (collectively "IVAX") move for leave to amend their counterclaims against Bristol–Myers Squibb. Having heard oral argument on February 14, 2000, and for reasons expressed in this opinion, the court denies the motion.

## BACKGROUND

On January 4, 2000, this court granted the motion by plaintiff-counterclaim defendant Bristol–Myers Squibb Company ("Bristol") to dismiss and strike all counterclaims of Baker Norton Pharmaceuticals and portions of counterclaims by Zenith Goldline Pharmaceuticals, to the extent they related to allegations of conduct immunized by the Noerr–Pennington doctrine. *Bristol–Myers Squibb Co. v. Ivax Corporation and Zenith Goldline Pharmaceuticals, Inc.*, 2000 WL 4864 (D.N.J. Jan.4, 2000). The excised counterclaims still contain the following allegations: 1) Bristol committed state law unfair competition by obtaining patents through fraud and inequitable conduct and asserting invalid patents against Zenith Goldline (Countercl. at 34–36); 2) Bristol monopolized and attempted to monopolize the relevant market in violation of Section 2 of the Sherman Act, by securing patents through inequitable conduct and fraud on the PTO, enforcing patents that it knows are invalid, and bringing litigation to exclude Zenith Goldline from the market, with resulting injury to competition (Countercl. at 37–40); and 3) Zenith Goldline moves for declaratory judgment that the '803 and '537 patents are invalid and unenforceable (Countercl. at 40).

The January 4 opinion removed many of counterclaimants' allegations from issue.

First, the court granted Bristol's motion to dismiss the Sherman Act allegations to the extent that Bristol is immunized under the Noerr–Pennington principle that antitrust liability cannot flow from valid efforts to obtain government action. *See Bristol–Myers Squibb v. IVAX*, 77 F.Supp.2d 606, 609–615. The court reasoned:

> Even taken at face value, as required at this stage, the counterclaimants' allegations of tortious conduct are insufficient to remove Bristol's actions from the ambit of the Noerr–Pennington doctrine. To survive this motion to dismiss, the counterclaimants must have set forth sufficient information for one to infer that their allegations are supportable; they may not rely on bald assertions or legal conclusions made in the guise of factual allegations.... Here, Baker Norton and Zenith Goldline have provided the court and their adversary with no information concerning the circumstances under which Bristol purportedly obtained confidential business information. Likewise, they have failed to allege the requisite elements of any purported misrepresentation claim. *Cf.* Fed.R.Civ.P. 9(b). The counterclaimants have fallen short of the pleading standards mandated by the federal rules: this court is faced with a request to override Bristol's immunity when it is unable to discern any misconduct.

*Id.* at 612. Yet the court found that even "[i]f misconduct were evident, counterclaimants' argument would remain inadequate" pursuant to *Noerr* and Supreme Court and Third Circuit precedent that immunity is not disturbed by a defendant's deliberate deception of the public through a misleading publicity campaign, "improper or even unlawful lobbying techniques," or the dissemination of false information during a lobbying campaign that includes "bribery, deceit or other wrongful conduct that may have affected the decision making process." *See, e.g., Armstrong Surgical Center, Inc. v. Armstrong County Me-*

*morial Hospital,* 185 F.3d 154 (3rd Cir. 1999).

Next, the court concluded that certain allegations of unfair competition should be dismissed pursuant to *Brownsville Golden Age Nursing Home v. Wells,* 839 F.2d 155 (3rd Cir.1988), which ruled that liability for state-law causes of action cannot rest upon allegations of conduct immunized from the federal antitrust laws. Employing the same reasoning, the court dismissed the promissory estoppel counterclaims because they rested on allegations that Bristol made numerous misleading statements during congressional hearings and "even misrepresentations made to induce government action are protected" under Noerr-Pennington. *Id.* at 616–617. Finally, the court dismissed Baker Norton's declaratory judgment counterclaim, which removed non-defendant Baker Norton from this litigation by dismissing all of its counterclaims.

Now, the IVAX counterclaimants have accepted the court's invitation to submit a copy of proposed amended counterclaims so that the court may determine whether the proposed amendment might resuscitate the pleadings or be futile. 77 F.Supp.2d at 620. Bristol opposes the motion.

### DISCUSSION

1. *Standard to File Amended Pleadings*

■ Fed.R.Civ.P. 15(a) directs parties to apply to the court for permission to amend their pleadings; "and leave shall be freely given when justice so requires." To further the policy consideration that litigation, where possible, should be decided on the merits, the Third Circuit has repeatedly stated a "strong preference that [claimants] be given leave to amend where amendment is likely to cure the defects resulting in dismissal." *Blasband v. Rales,* 971 F.2d 1034, 1054 (3rd Cir.1992); *see also Kauffman v. Moss,* 420 F.2d 1270, 1276 (3rd Cir.1970).

■ The Supreme Court has identified several factors to consider when deciding a motion to amend:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

*Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). This analysis applies where, as here, claims have been dismissed under Fed.R.Civ.P. 12(b)(6) for failure to state a claim for relief. *Id.* at 179. However, a court may refuse to allow amendment where such would be futile because the proposed amendment could not withstand a motion to dismiss. *Massarsky v. General Motors Corp.,* 706 F.2d 111, 125 (3rd Cir.1983).

2. *The Proposed Amended Counterclaims*

The IVAX parties submit a 51–page proposed amendment to their counterclaims. The amendment, as the original, contains five counts: 1) unfair competition, 2) promissory estoppel, 3) monopolization in violation of Section 2 of the Sherman Act, 4) attempted monopolization, and 5) declaratory judgment of invalidity and unenforceability.

A. *Unfair Competition*

■ The amended counterclaim for unfair competition asserts that in May 1995, Bristol obtained, "through improper and illegal means," confidential Baker Norton business information indicating Baker Norton's plans to market a 96–hour taxol infusion; that Bristol falsely represented to the National Institutes of Health and/or the National Cancer Institutes that it would promote a 96–hour infusion; and that Bristol employed such "false pretenses" to obtain an exclusive license to

the government-owned Wilson patent for the sole purpose of excluding Baker Norton from the market. Countercl. ¶¶ 60, 135–140. Further, Baker Norton alleges that in March 1996, Bristol obtained a copy of Baker Norton's paclitaxel samples and a confidential research protocol concerning the use of paclitaxel to treat Kaposi's sarcoma, and "exploited" this information to interfere with Baker Norton's expectation of a nonexclusive license. Countercl. ¶¶ 64, 86, 90, 141–155.

If counterclaimants could colorably assert that their injury flowed directly from Bristol's conduct, their allegations concerning misappropriation of confidential business information might state a claim under New Jersey law for unfair competition or for misappropriation of trade secrets. *See, e.g., Rohm and Haas Co. v. Adco Chem. Co.*, 689 F.2d 424, 429–30 (3rd Cir.1982) (stating elements of trade secret misappropriation as: 1) a trade secret, 2) communicated in confidence by plaintiff to employee, 3) disclosed by employee in breach of that confidence, 4) acquired by the competitor with knowledge of the breach of confidence, and 5) used by the competitor to plaintiff's detriment); *Hoffman–LaRoche v. Genpharm*, 50 F.Supp.2d 367 (D.N.J. 1999) (finding that the "key" to unfair competition is the misappropriation of property of commercial value). However, as this court ruled in its earlier opinion, the Noerr–Pennington doctrine mandates that "state law tort claims must be dismissed when they are grounded upon allegations of injury that arise from government action." 77 F.Supp.2d at 615.

That is still so. The alleged injuries to Baker Norton are the result of Bristol's successful efforts to petition the government. The court rejects IVAX's suggestion at oral argument that Bristol "changed its research priorities" to IVAX's detriment—any such detriment was evidently the result of government action. In short, the counterclaimants have not alleged that they suffered independent injury caused by Bristol's actions. *Cf. We,*

*Inc. v. City of Philadelphia, Dep't of Licenses and Inspections*, 983 F.Supp. 637 (E.D.Pa.1997). Accordingly, the court denies leave to amend the unfair competition counterclaims.

### B. *Sherman Act*

The amended antitrust counterclaims assert, *inter alia*, that Bristol "obtained exclusive licenses through false pretenses and misappropriation and use of Baker Norton's confidential business information; [and] obtained orphan drug exclusivity through the misappropriation and use of Baker Norton's confidential business information and for the sole purpose of excluding Baker Norton and Zenith Goldline from the relevant market." Countercl. ¶¶ 166, 172.

The court need not repeat at length its rationale for the initial dismissal of the Sherman Act counterclaims. *See* 77 F.Supp.2d, at 611–615. It is apparent that the antitrust counterclaims must fail for the same reason as the unfair competition claim: the Noerr–Pennington doctrine precludes the imposition of liability on Bristol for acts undertaken by the government. Here, the National Cancer Institutes and the Food and Drug Administration directly caused Baker Norton's injuries. Leave to amend the Sherman Act counterclaims is denied.

### C. *Promissory Estoppel*

IVAX's original counterclaims sought to ground a promissory estoppel cause of action on statements allegedly made by Bristol at congressional hearings in 1991 and 1993 that it would not bar competition in the market for paclitaxel-based drugs. In their amendment, counterclaimants now allege that Bristol made statements at press conferences and in press releases, as well as "other public statements available to and directed at the pharmaceutical industry, including Bristol's competitors." Countercl. ¶ 159.

Counterclaimants now charge that "Bristol promised that it did not have a monopoly over the marketing of paclitaxel-based drugs and that the only exclusivity Taxol® would have was the non-patent exclusivity it received" pursuant to the Hatch–Waxman Act. *Id.* Thus, IVAX asserts that Bristol stated at a December 1992 press conference that "Taxol has never been patented, and no patent is even possible. So the only exclusivity or protection the company has is five years protection from an abbreviated new drug application granted under the Hatch–Waxman Act to every new chemical entity." Countercl. ¶ 42. Again, in the accompanying press release, "the company will have only five years of exclusivity before potential competition from generic Taxol® products." *Id.* According to the counterclaimants, Bristol through these and similar statements "continually represented to the pharmaceutical industry and the public generally that it would not obtain a monopoly over paclitaxel-based drugs and would have only limited exclusivity with respect to Taxol®." Countercl. ¶ 54.

■ Concerning Bristol's statements to Congress, the court repeats that "Noerr has long protected such a situation from antitrust scrutiny—and in our Circuit, it is likewise protected from state law liability." 77 F.Supp.2d, at 617. Bristol's alleged statements to the press are no different. In opposition to this motion, Bristol argues that its comments reported in the press were "just as much a part of the petitioning process as Congressional testimony. Matters that are subject to Congressional inquiries are, by definition, public matters and are, almost without exception, reported in the press. To hold that a statement made in a Congressional hearing is nonactionable, while a virtually identical statement reported in the press is actionable, would vitiate the Noerr–Pennington immunity and the First Amendment interest that it protects." Bristol Br. at 20. Bristol refers to the *Noerr* decision, which refused to impose antitrust liability where a number of railroads conspired to conduct a publicity campaign designed to foster favorable laws and destroy the trucking industry. *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961). The Supreme Court concluded that although the campaign utilized misleading publicity materials which it found "far short of the ethical standards generally approved in this country," the railroads' "[c]irculars, speeches, newspaper articles, editorials, magazines, [and] memoranda" were of no consequence to Sherman Act liability. *Id.* at 140, 142, 81 S.Ct. 523.

*Noerr* controls. Though counterclaimants' amendment now includes a broader universe of purported "promises," their new claims can not circumvent Noerr scrutiny. Finally, the court again rejects the counterclaimants' intimations that Bristol knew its statements were false. IVAX Br. at 10. *See Armstrong Surgical Center,* 185 F.3d at 162.

## CONCLUSION

The IVAX parties' proposed amended counterclaims present essentially the same package in different wrapping. The amended claims for unfair competition, Sherman Act violations, and promissory estoppel are again barred by the Noerr–Pennington doctrine. Amendment of the counterclaims would be futile; leave to amend is denied. *See Massarsky,* 706 F.2d 111, 125 (3rd Cir.1983).

**SO ORDERED.**

## ORDER

This matter is before the court on the motion by IVAX Corporation, Baker Norton Pharmaceuticals, Inc., and Zenith Goldline Pharmaceuticals (collectively "IVAX") for leave to amend their counterclaims against Bristol–Myers Squibb. The court heard oral argument on February 14, 2000. For the reasons expressed in the accompanying opinion,

It is on this 29th day of February, 2000:

ORDERED that the motion for leave to amend counterclaims is denied.