**ECRIX CORPORATION, Plaintiff and Counter–Defendant,**

v.

**EXABYTE CORPORATION, Defendant and Counter–Claimant.**

**No. Civ.A. 99–K–1151.**

United States District Court, D. Colorado.

May 10, 2000.

Daniel S. Hoffman, Barbara Z. Blumenthal, Hoffman Reilly Pozner & Williamson LLP, Denver, CO, David J. Lee, Daniel N. Fishman, Chrisman, Bynum & Johnson, P.C., Boulder, CO, for plaintiff and counter-defendant.

Nancy J. Gegenheimer, Linnea Brown, Holme Roberts & Owen LLP, Denver, CO, George G. Matava, Brian A. Carpenter, LeBoeuf, Lamb, Greene & MacRae, L.L.P., Denver, CO, for defendant and counter-claimant.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

Ecrix Corporation's ("Ecrix") original complaint requested a declaratory judgment that it was not infringing any of Exabyte Corporation's ("Exabyte") patents. Ecrix manufactures helical-scan drives for recording computer data.[1] Exabyte has at least seven patents on methods of recording and reading helically-recorded data. Ecrix filed an amended complaint that in addition to requesting a declaratory judgment of non-infringement also charged Exabyte with antitrust violations, patent misuse, declaration of valid license in the event of possible infringement, es-

---

1. "Helical-scan" refers to a method of recording and writing data used by storage devices in which the heads are mounted on a rotating drum. "Helically-recorded data" refers to data recorded by this method.

toppel, unfair competition and tortious interference. Exabyte has counterclaimed for patent infringement of eight patents.

On March 10, 2000, I dismissed without prejudice Ecrix's Ninth through Fourteenth Causes of Action, granted Exabyte's Motion to Separate Issues for Trial, denied Exabyte's Motion for Limited Stay of Discovery, granted in part and denied in part Exabyte's Motion to Strike Allegations of Settlement Discussions between the Parties, granted Ecrix's Motion to Compel Full Disclosure under Rule 26, denied as moot Ecrix's Motion to Compel Response to Exabyte's Interrogatory No. 2, and denied Exabyte's Motion for Protective Order. Pending is Exabyte's Motion for 1) A Protective Order and 2) Relief from Confidentiality Order so that Exabyte Can Have a Representative Attend Depositions.

1. *Exabyte's Request for a Protective Order regarding Ecrix's Interrogatory No. 1 and 30(b)(6) Category 21 designation.*

Ecrix's Interrogatory No. 1 requests Exabyte to:

Identify each claim of the patents that Exabyte considers to be infringed by an Ecrix product and for each element of each such claim identify each "new and useful process, machine, manufacturer, or composition of matter, or any new and useful improvement thereof," as used in 35 U.S.C. § 101 of each allegedly infringing Ecrix product that allegedly corresponds to the claim element.

Exabyte responded to the interrogatory by identifying patents and claims that were infringed but objected to the requirement in the question to "identify each 'new and useful process, machine, manufacturer, or composition of matter, or any new and useful improvement thereof,' as used in 35 U.S.C. § 101 of each allegedly infringing Ecrix product that allegedly corresponds to the claim element." On February 29, 2000, Ecrix clarified that it was requesting a comparison of the elements of each claim to the element of the Ecrix drive on each of the patents and claims. On the same day, Ecrix served Exabyte with a Fed. R.Civ.P. 30(b)(6) notice, setting the deposition of one or more representatives to be designated by Exabyte on various matters. The testimony sought in the matter designated no. 21 was information on each of the allegedly infringed patents, including:

a. Conception of any subject matter claimed in the patent.

b. Prior art to any subject matter claimed in the patent.

c. Reduction to practice of any subject matter claimed in the patent.

d. Perfection and/or improvement of any subject matter claimed in the patent.

e. Preparation and prosecution of the application that issues as the patent.

f. The meaning of terms used in any claim of the patent.

g. Construction of any claim of the patent.

h. Infringement of any claim of the patent.

i. Failures to develop the subject matter of any claim of the patent.

j. "Long-felt need" for the subject matter of any claim of the patent.

k. Awards and/or other tribute paid to the subject matter of any claim of the patent.

l. Exabyte's studies (if any) of infringement, validity and/or enforceability of any claim of the patent.

m. Commercialization of the subject matter claimed in the patent.

n. Advertising and/or promotion of products embodying any subject matter claimed in the patent.

o. Sales and/or selling products embodying any subject matter claimed in the patent.

p. Costs of making and/or selling products embodying any subject matter claimed in the patent.

q. Revenues and/or profits derived from making and or selling products embodying any subject matter claimed in the patent.

On Friday, April 14, 2000, Ecrix took the 30(b)(6) deposition of Exabyte's chief engineer, Tim Hughes, with respect to category no. 21. At the beginning of the deposition, Exabyte objected that many of the sub-categories, especially b. through j., called for legal conclusions or would be handled by the experts in the case. In addition, Exabyte asserts, because of the Stipulation and Protective Order entered on December 7, 1999, any Exabyte employee, including Hughes, is precluded from seeing any Ecrix materials. Hughes has been given permission to see a limited number of Ecrix documents but has not seen any Ecrix microcode and is not permitted to see the bulk of documents produced by Ecrix.

At the deposition, Ecrix examined Hughes on every claim of every patent in suit and asked if Ecrix's product infringed such claim. Exabyte objected and continues to object that such examination calls for a legal conclusion. Ecrix opposed and continues to oppose this objection, asserting it is asking for Hughes' understanding. The examination of Hughes proceeded. At the end of the deposition, Ecrix stated it wanted Exabyte to produce a corporate representative pursuant to Rule 30(b)(6) who can attest to the issues in category no. 21 and can testify whether or not each claim in the patent infringes.

According to Exabyte, it has done all it can from a corporate standpoint within the constraints of the Stipulation and Protective Order to respond to Interrogatory No. 1 and to produce a 30(b)(6) witness who can answer the legal conclusions sought in category no. 21, short of an expert's re-

port. Exabyte moves for a protective order asserting 1) this is the province of expert opinions; and 2) Exabyte employees are constrained by the Confidentiality Order while the experts are not and expert disclosures are not due until July 28, 2000.

Ecrix opposes the issuance of a protective order. It asserts Exabyte has no basis for charging it with infringement which is why Ecrix has charged it with the violation of the antitrust laws and patent misuse; Exabyte has provided incomplete claim charts; [2] Hughes was unable to support Exabyte's infringement charges at the 30(b)(6) deposition; and Exabyte is seeking to bar basic discovery on items a. through j. in category no. 21, encompassing most of the key issues in a patent case. Attempting an analogy to a contract case, Ecrix maintains Exabyte's position is tantamount to saying discovery relating to the contract should be barred.

Ecrix denies it is seeking early expert discovery on legal issues. Rather, it maintains, the discovery relates to the state of Exabyte's knowledge and infringement analysis when it threatened Ecrix that it would file suit in January 1999, when it counterclaimed alleging infringement in November 1999 and at the present time with regard to some of the alleged infringements.

Exabyte claims categories b. through j. call for legal conclusions and claim construction which is a matter of law. In this regard it cites *Rockwell Int'l Corp. v. United States*, 147 F.3d 1358, 1361 (Fed. Cir.1998) and *Rohm & Haas Co. v. Brotech Corp.*, 127 F.3d 1089, 1092 (Fed.Cir.1997). Neither of those cases addresses the issue at hand. *Rockwell* merely stated claim construction and validity were to be determined in phase 1 of the proceedings. In *Rohm*, the Federal Circuit cited *Symbol Technologies, Inc. v. Opticon, Inc.*, 935 F.2d 1569 (Fed.Cir.1991) where the court

---

**2.** Claim charts are industry-standard documents for infringement analysis in which the elements of a patent claim are set forth in one column, and corresponding elements of the accused device are juxtaposed in the next column.

upheld a finding of infringement where the patentee's expert witness presented a claim chart identifying particular components of the accused device with each claimed element. By contrast, in *Rohm* the plaintiff rested its case for infringement on the summary testimony of its expert witness. The Federal Circuit found it had not supplied sufficient evidence to prove that the accused product or process met every element or limitation of a claim. Neither case precludes the allegedly infringing party from inquiring into the facts on which the patent holder bases its infringement claim. Nor do the cases support the proposition that claim charts are solely within the purview of experts.

Exabyte also cites *Everflora Miami, Inc. v. United States,* 885 F.Supp. 241 (Ct. Int'l Trade 1995) where the court construed CIT Rule 30(b) permitting a party to serve notice of oral examination on the United States, and requiring such party to "describe with reasonable particularity the matters on which examination is requested." *Id.* at 242. In one subpoena, the plaintiff vaguely requested defendant to designate a witness from the Miami District having the "most knowledge" of "protest and 520(c)(1) procedures" but failed to describe with reasonable particularity the factual matters for which deposition testimony was sought. In the other subpoena, plaintiff again vaguely requested defendant to designate a witness from the Miami District having the "most knowledge" of "the dumping duty investigation of imported cut flowers," but did not provide any hint as to the particular factual matters relating to such dumping investigation on which testimony was sought. The court found the subpoenas "imposed an unreasonable demand and restriction on defendant in the designation of the appropriate witness or witnesses." Such is not the case here. Ecrix has clarified the information sought in Interrogatory No. 1 and, unlike the subpoenas in *Everflora,* the subcategories of category no. 21 in the Rule 30(b)(6) notice are specific in the information they seek.

Exabyte also relies on the unreported decision of *Coleman v. General Electric Co.,* a Title VII employment discrimination case where the court stated:

> The problem in this case is distinguishing between questions which go to a deponent's knowledge of the facts, and those which seek the discovery of the theory of the defense or which invade the privacy of the trial preparation process [and therefore conflict with the Supreme Court's Opinion in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947) ]. Questions about in-house counsel's view of the case, facts which counsel considers significant, or any specific questions to be asked about the investigation or search efforts to locate documents all fall under the category of questions about "mental impressions." *See [Ford v. Philips Electronics Instruments Co.,* 82 F.R.D. 359, 360 (E.D.Pa.1979) ] These questions would be impermissible.

No. 94–CV–4740, 1995 WL 358089, at *2 (E.D.Pa. June 8, 1995). The court found Fed.R.Civ.P. 26(b)(3) governed the situation and the questions to be posed to the deponents were designed to elicit information discovered during the internal investigation conducted by General Electric's in-house counsel in connection with preparing responses to plaintiff's discovery and details of that investigation would reveal counsel's mental impressions.

■ This scenario differs. Here, Ecrix does not seek the mental impressions of Exabyte's counsel or experts. Rather it requests information in Exabyte's possession on which Exabyte based and bases its assertions that Ecrix has infringed its patents. The information is relevant to Ecrix's claims of patent misuses and antitrust violations. The March 10, 2000 Memorandum Opinion and Order bifurcated the patent infringement and antitrust unfair competition claims but stated discovery of information related to the antitrust claims would not be stayed. The

information sought by Ecrix relates to facts which Exabyte has in its possession which led it to make its threats of patent infringement and to file a counterclaim for patent infringement. Such information is relevant and discoverable and, unlike in *Coleman,* is not protected by the work-product doctrine. Nor is it solely within the domain of expert testimony.

Paragraph 4.d. of the Stipulation and Protective Order entered on December 7, 1999 allows only attorneys of record and experts retained in the case to have access to "Protected Information." [3] Paragraph 10 provides a procedure to be followed by opposing counsel who objects to the designation of certain information as Protected Information. If counsel cannot resolve the dispute on an informal basis, opposing counsel may move for a disclosure consistent with the Stipulation and Protective Order.

If Exabyte requires its chief engineer or any other representative designated under Rule 30(b)(6) to have access to information Ecrix had designated as "Protected Information" in order to address matters designated in no. 21, and counsel cannot resolve the dispute informally, Exabyte's counsel may move for limited disclosure to its representative pursuant to Paragraph 10 and the other provisions of the Stipulation and Protective Order. For the aforesaid reasons, I deny Exabyte's Motion for A Protective Order.

2. *Relief from Confidentiality Order so that Exabyte Can Have a Representative Attend Depositions.*

■ Exabyte served a Rule 30(b)(6) deposition notice on Ecrix. Exabyte asserts as a party it has a right to have a representative present at this and other depositions. The Rule 30(b)(6) deposition will involve technical information about Ecrix's product. According to the Stipulation and Protective Order only Exabyte's counsel and experts may have access to the "Protected Information" which will be sought in the deposition. Exabyte seeks permission to have its CFO Steve Smith, a "non-technical person," present at the Rule 30(b)(6) deposition and a representative of its choosing to attend each deposition. Ecrix counters the Stipulation and Protective Order is evenhanded and, in signing it, Exabyte waived its right to have a representative present at each deposition.

The purpose of the Stipulation and Protective Order is to prevent "the disclosure and use of Protected Information except as set forth herein." (Stip. & Protective Order at 1.) The Stipulation and Protective Order does not expressly or impliedly state either party intends to waive its right to have a representative present at a deposition.

I allow each party to have a representative of its choice at any deposition noticed by either party and such representative shall be required to sign the affidavit attached to the Stipulation and Protective Order as Exhibit A, promising not to divulge any Protected Information or to use it for any purpose other than this litigation. I therefore grant Exabyte's motion to have a representative attend each deposition, subject to the proviso of the signing of the affidavit. Ecrix shall be permitted to do the same. Accordingly,

**IT IS ORDERED** that Exabyte's Motion for a Protective Order is **DENIED** and its Motion for Relief from Confidentiality Order so that Exabyte Can Have a Representative Attend Depositions is **GRANTED** to the extent consistent with this Order.

---

**3.** For easy reference and clarity, a copy of the Stipulation and Protective Order is attached.