**ROHM AND HAAS COMPANY,**
Plaintiff/Cross–Appellant,

v.

**BROTECH CORPORATION,**
Defendant–Appellant.

Nos. 97–1024, 97–1063.

United States Court of Appeals,
Federal Circuit.

Oct. 20, 1997.

Rehearing Denied; Suggestion for
Rehearing In Banc Declined
Dec. 4, 1997.

Rudolf Eric Hutz, Connolly, Bove, Lodge & Hutz, of Wilmington, DE, argued for plaintiff/cross-appellant. With him on the brief were N. Richard Powers and Jeffrey B. Bove.

Raphael V. Lupo, McDermott, Will & Emery, Washington, DC, argued for defendant-appellant. With him on brief were Jack Q. Lever, Jr., Donna M. Tanguay, and Robert W. Zelnick. Of counsel on brief were Paul R. Rosen, Spector Gadon & Rosen, P.C., Philadelphia, PA, and Herbert B. Keil, Keil & Weinkauf, Washington, DC. Of counsel was Robert K. Payson, Potter Anderson, Wilmington, DE.

Before RICH, RADER, and BRYSON, Circuit Judges.

RADER, Circuit Judge.

Rohm & Haas Company (R & H) sued Brotech Corporation for infringement of U.S. Patents Nos. 4,256,840 (the '840 patent), 4,382,124 (the '124 patent), and 4,224,415 (the '415 patent). Brotech asserted defenses of noninfringement and inequitable conduct. After a three-week bench trial, the district court determined that R & H did not prove infringement, and that Brotech did not prove by clear and convincing evidence that R & H had conducted itself inequitably before the Patent and Trademark Office.

Both parties appeal. R & H complains that the trial court did not accord proper weight to its expert's opinion testimony about literal infringement of the '124 and '840 patents. Brotech argues that the trial court did not consider the overall pattern of misconduct over the 25–year course of patent prosecution. Brotech also seeks attorney fees. Because the trial court carefully analyzed the proffered evidence to verify the presence in the accused products and processes of each limitation of the claims and did not abuse its discretion by refusing to declare the Rohm & Haas patents unenforceable or to award attorney fees, this court affirms.

## I.

On July 18, 1958, R & H filed a patent application related to macroreticular copolymer beads and processes for their preparation. After preparation, such beads may be derivatized to obtain ion exchange resins used in various chemical processes, such as water conditioning. Following several prolonged interference proceedings and a complex prosecution history, two divisional applications from this parent issued as the '840 and '124 patents in 1981 and 1983 respectively. These patents contain both process and product by process claims.

Before the mid–1950s, chemists employed the process of suspension copolymerization to obtain ion exchange resins. This process involves dispersing a water insoluble mixture of monomer and crosslinking agent into small droplets suspended in water. After polymerization is initiated, the crosslinking agent connects and entangles the growing linear polymer chains, forming a water insoluble aggregate. Suspension polymerization conducted in this manner produces small polymer beads (described as gel beads) that have a glassy appearance and relatively small pores ($<30\text{Å}$).

In the mid 1950s chemists at a number of companies devised a modified suspension polymerization process, embodiments of which are disclosed in the '124 and '840 patents. In this process, a cosolvent, also called the precipitant, is added to the mixture of the monomer and the crosslinking agent. This precipitant forms a homogeneous solution with the monomer and crosslinking agent, but the three-component mixture is not a solvent for the growing polymer chains. This three-component mixture is used in a standard

suspension polymerization process to produce a superior result. The growing polymer chains precipitate at multiple sites within the droplets and grow into microgels. Eventually the microgels grow sufficiently large that they contact each other. Thus, the new process produces an opaque or translucent bead that is an agglomeration of microgels permeated by a network of large (40Å–200,000Å) interconnected channels. Polymer beads having such a structure are called macroreticular beads. These beads have a much higher surface-area-to-volume ratio and, consequently, a greater ion exchange capacity than gel beads.

Claim 1 of the '124 patent is representative of the claims at issue. It reads:

1. A process for preparing reticular crosslinked copolymer beads of high specific surface *having controlled reduced apparent density of at least about 0.02 density units less than the apparent density of gel-type copolymer beads of the same composition made in absence of liquid precipitant,* which comprises suspension copolymerizing in an aqueous medium

(1) a polyvinylidene monomer containing a plurality of ethylenically unsaturated groups in non-conjugated relationship and

(2) a monovinyl aromatic hydrocarbon monomer

in a liquid precipitant which

(a) has a low solubility in the aqueous medium,

(b) is a solvent for the monomer mixture and

(c) *does not appreciably swell the copolymer of said polyvinylidene monomer and said monovinyl aromatic hydrocarbon monomer,* said liquid precipitant and said polyvinylidene monomer each being present in an amount exceeding the critical concentration of each needed for phase separation of the copolymer from the monomer phase as the copo-

lymer is formed, and recovering the copolymer beads so formed.

(Paragraphing and emphasis added).

R & H sued Brotech for infringement of claims 1, 4, 8, and 9 of the '124 patent and claims 1, 2, and 6 of the '840 patent. Brotech stipulated that its process generally utilized suspension polymerization to produce its products. Brotech, however, contended that its process used a cosolvent that was not a precipitant as defined in the claims. At trial, the parties focused their dispute on whether Brotech's third component was a precipitant within the terms of the claims.

▮ In a thorough opinion, the trial court determined that R & H had proven that Brotech's process used a precipitant within the meaning of that term in the claims. However, the trial court also determined that R & H did not satisfy its burden of proof as to two other limitations that appear in the claims.[1] In particular, it determined that R & H had not shown either that Brotech's process produced beads with an "apparent density of at least about 0.02 density units less than the apparent density of gel-type copolymer beads of the same composition made in absence of liquid precipitant" or that Brotech's precipitant did not "appreciably swell the copolymer" beads. Because all of the asserted claims contained at least one of these elements, the trial court granted judgment of noninfringement in favor of Brotech.

On appeal, R & H asserts that the conclusory opinion of its expert witness supplied adequate evidence to show Brotech's process included the apparent density and swelling limitations of the claims. R & H's technical expert, however, had only testified in general terms that the accused processes and products infringe the asserted patents. R & H argues that this summary expert opinion served to establish a prima facie case of infringement and placed a burden of production on Brotech to rebut this case. In support of this position, R & H points to this court's decision in *Symbol Technologies, Inc. v. Opticon, Inc.,* 935 F.2d 1569, 19 USPQ2d

---

1. When, as in this case, a patentee uses the preamble to recite material limitations of the claimed invention, this court will give effect to that usage. *See Rowe v. Dror,* 112 F.3d 473, 478,

42 USPQ2d 1550, 1553 (Fed.Cir.1997). Indeed, both limitations appear in the body of several asserted claims.

1241 (Fed.Cir.1991). In *Symbol Technologies,* this court upheld a finding of infringement where the patentee's expert witness presented a claim chart identifying particular components of the accused device with each claimed element. Beyond the claim chart, the expert in *Symbol Technologies* presented no detailed analysis linking the particular parts of the accused device with the claimed elements.

## II.

■ To show literal infringement of a patent, a patentee must supply sufficient evidence to prove that the accused product or process meets every element or limitation of a claim. *See Lemelson v. United States,* 752 F.2d 1538, 1551, 224 USPQ 526, 533 (Fed.Cir. 1985) ("It is ... well settled that each element of a claim is material and essential, and that in order for a court to find infringement, the plaintiff must show the presence of every element ... in the accused device."); *Laitram Corp. v. Rexnord, Inc.,* 939 F.2d 1533, 1535, 19 USPQ2d 1367, 1369 (Fed.Cir.1991) ("[T]he failure to meet a single limitation is sufficient to negate infringement of the claim...."). Infringement requires proof by a preponderance of the evidence. *See SSIH Equip. S.A. v. United States Int'l Trade Comm'n,* 718 F.2d 365, 376, 218 USPQ 678, 688 (Fed.Cir.1983). This court reviews a trial court's factual infringement determination for clear error. *See Pennwalt Corp. v. Durand–Wayland, Inc.,* 833 F.2d 931, 936, 4 USPQ2d 1737, 1740 (Fed.Cir.1987).

■ In this case, the district court determined that the patentee had not shown that the accused process included either of two limitations found in the patent claims. R & H rested its case for infringement on the summary testimony of its expert witness. While an expert may testify to the ultimate issue in a case without giving the basis for that opinion, Fed.R.Evid. 704, 705, nothing in the rules requires a fact finder to accept this conclusion. In *Symbol Technologies,* this court explained the distinction between a proffer of evidence and the sufficiency of the proffered evidence: "In short, [the patentee] was permitted to rest its prima facie case on [the] expert testimony, including charts, that

the patents were infringed, and the District Court was free to accept or reject that evidence." 935 F.2d at 1576. Nothing in the rules or in our jurisprudence requires the fact finder to credit the unsupported assertions of an expert witness.

The patentee bore the burden of proving that the accused product or process satisfied each element of the claims. R & H offered nothing more than its expert's general opinion that the accused product or process infringed the patents. The district court determined that the patentee had not satisfied its burden of proof on two claim elements. With very little in the record other than the expert's summary opinion, this court has little or no basis to question the district court's determination.

R & H also pointed to purported admissions by Brotech's expert witness during a deposition in which he failed to identify these limitations as placing Brotech's process outside the patent claims. The district court examined these statements and found that the passage in question was "muddled and subject to misinterpretation." *Rohm & Haas Co. v. Brotech Corp.,* No. 90–109–JJF, slip op. at 23 (D. Del. June 30, 1995). Indeed, during discovery, Brotech refused to admit that its processes and products included the reduced apparent density claim limitation. At that time, Brotech insisted it had not performed requisite tests to determine the apparent density of its beads. Under these circumstances, R & H had the burden to prove Brotech's infringement. This court therefore detects no clear error in the district court's finding that R & H did not prove infringement.

Patent litigation frequently is complex, long, and difficult. Parties have available in patent cases, however, discovery procedures, partial or complete summary judgment, and evidentiary rules to narrow the issues for trial. *See, e.g., Warner–Jenkinson Co. v. Hilton Davis Chem. Co.,* — U.S. —, — n. 8, 117 S.Ct. 1040, 1053 n. 8, 137 L.Ed.2d 146 (1997); *Becton Dickinson & Co. v. C.R. Bard, Inc.,* 922 F.2d 792, 795, 17 USPQ2d 1097, 1099 (Fed.Cir.1990) ("As in other cases, the grant of summary judgment under Fed. R.Civ.P. 56, is appropriate in a patent case

where no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." (footnote omitted)); *Symbol Techs.*, 935 F.2d at 1576 ("[T]he Federal Rules of Evidence are expressly applicable to all proceedings in the courts of the United States, which must include civil suits arising under Title 35."). A party must either use these procedures to narrow issues prior to trial or meet its burden of proof at trial. In this case, R & H simply did not meet its burden of proof.

## III.

Brotech appeals the district court's determination that R & H's patents were not rendered unenforceable due to inequitable conduct. This court reviews this determination for an abuse of discretion, and refuses to substitute its judgment for that of the trial court. *See Kingsdown Med. Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867, 876, 9 USPQ2d 1384, 1392 (Fed.Cir.1988).

The patents in this litigation issued after a 25–year prosecution involving six interference proceedings, changes in the personnel involved in the prosecution, and a continuing increase in the technical understanding of the field. From this lengthy record, Brotech found several instances where R & H contradicted itself or appears, in hindsight, to have behaved with less than complete candor. The trial court, however, carefully considered each of the instances that Brotech identified. In fact, the district court took testimony from many persons involved in the prosecution, weighed their credibility, and ultimately determined that Brotech had not shown that R & H had intentionally deceived the PTO. This court can detect no clear error in these factual determinations. Accordingly, the dis-

trict court's determination that the patents were not unenforceable was not an abuse of discretion.

## IV.

Because this court affirms the district court's disposition of the inequitable conduct issue, it need not address Brotech's request for attorney fees under 35 U.S.C. § 285 (1994). Brotech also seeks attorney fees incurred due to R & H's alleged litigation misconduct. Brotech asserts that R & H made a baseless charge of infringement against a Brotech product and then withdrew this claim shortly before trial. Brotech then moved for sanctions under Rule 11 for failure to conduct an adequate prefiling investigation. *See* Fed.R.Civ.P. 11. The district court denied Brotech's motion. This court reviews that denial for an abuse of discretion. *See S. Bravo Sys., Inc. v. Containment Techs. Corp.*, 96 F.3d 1372, 1374–75, 40 USPQ2d 1140, 1142–43 (Fed.Cir.1996). The trial court ruled that R & H's initial claim of infringement was not unreasonable in light of the available information at the time of filing. It also found that R & H had responded to Brotech's discovery requests in a timely and complete manner. Accordingly, the trial court properly denied Brotech's request for sanctions.

*AFFIRMED.*