**HOFFMANN–LA ROCHE INC.**
and Syntex (U.S.A.) Inc.,
Plaintiffs–Appellees,

v.

**INVAMED INCORPORATED, Danbury Pharmacal Inc., Purepac Pharmaceutical Company, Watson Pharmaceutical Inc., Mylan Laboratories, Inc., Genpharm, Inc., and Teva Pharmaceutical USA, Inc., Defendants,**

and

Torpharm, Inc., Defendant–Appellant.

No. 99–1466.

United States Court of Appeals,
Federal Circuit.

May 23, 2000

John C. Vassil, Morgan & Finnegan, L.L.P., of New York, New York, argued for plaintiffs-appellees. With him on the brief were Tony V. Pezzano, Kathryn E. Diaz, and Sybil A. Lombillo.

Robert S. Silver, Caesar, Rivise, Bernstein, Cohen & Pokotilow, Ltd., of Philadelphia, Pennsylvania, argued for defendant-appellant. With him on the brief were Alan H. Bernstein, and William J. Castillo.

Before MAYER, Chief Judge, FRIEDMAN, Senior Circuit Judge, and GAJARSA, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

As part of a settlement of a patent infringement case, the plaintiffs dismissed their complaint. A defendant then moved the district court (1) to impose sanctions for the plaintiffs' alleged violation of Rule 11 of the Federal Rules of Civil Procedure by filing a baseless suit without a proper investigation and (2) to determine under 35 U.S.C. § 285 that the case was "exceptional" and to award the defendant attorney fees. The defendant also contended that

the plaintiffs' in-house counsel had violated a state rule .of professional conduct by discussing and reaching settlement directly with the defendant instead of dealing with the defendant through the its outside counsel, and that sanctions should be imposed for that alleged misconduct. The district court rejected all of these contentions. *See Hoffman–La Roche, Inc. v. Genpharm, Inc.,* 50 F.Supp.2d 367, 369 (D.N.J.1999). We affirm.

## I

A. The relevant facts, as stated by the district court and as shown by the record, are as follows:

The appellee Syntex (U.S.A.) Inc. ("Syntex") manufactures the drug ticlopidine hydrochloride, which it sells under the TICLID brand. The appellee Hoffmann–La Roche, Inc. ("Roche") is the exclusive distributor of the TICLID brand. Syntex and Roche are American corporations. Syntex has patents on the drug itself and on processes for manufacturing it. The appellant Torpharm, Inc., ("Torpharm"), a Canadian company, manufactures generic versions of drugs.

Torpharm and other manufacturers of generic drugs filed with the Food and Drug Administration Abbreviated New Drug Applications to market in the United States a generic form of ticlopidine hydrochloride. Roche and Syntex then filed suit, in the United States District Court for the District of New Jersey, against Torpharm and other generic drug manufacturers that had filed applications. They alleged that in manufacturing the generic product those companies used a process that infringed various Syntex patents.

In paragraphs 36 and 37 of their original and first amended complaint, the plaintiff set forth the basis for bringing the suit:

36. Roche, on behalf of Syntex, timely gave each defendant actual notice of the Syntex Patents and from that date has sought from each information that would assist Roche and Syntex in confirming whether each defendant's synthesis of ticlopidine hydrochloride is within the lawful scope of one or more claims of the Syntex Patents. No defendant has provided this information. No defendant has provided Roche or Syntex with sample quantities of the active ingredient ticlopidine hydrochloride used in their respective pharmaceutical preparation.

37. On information and belief, plaintiffs are presently not aware of any analytical technique which can be used to definitively establish that the ticlopidine hydrochloride manufactured by any of the defendants and used in their respective dosage form of pharmaceutical preparation was made by use of the invention of one or more claims of the Syntex Patents, and for that reason, has sought from each of them information as to its or its suppliers' process for the synthesis of that compound. In the absence of such information, plaintiffs resort to the judicial process and the aid of discovery to obtain under appropriate judicial safeguards such information as is required to confirm their belief and to present to the Court evidence that each and every defendant infringes one or more claims of the Syntex Patents.

The district court stated that Torpharm supplied Roche and Syntex with samples of its ticlopidine hydrochloride, but refused to provide

any information regarding the process of manufacture of the tablets because of a confidentiality agreement with the manufacturer of the ticlopidine hydrochloride. Plaintiffs then attempted to "reverse engineer" the Torpharm sample tablets to determine whether the process by which the tablets were made infringed upon the Syntex patents. However, plaintiffs could not ascertain

the process and could not determine whether it infringed the Syntex process patents.

*Hoffman–La Roche,* 50 F.Supp.2d at 372.

Johnson was Roche's Vice–President, Licensing and Corporate Development and its Chief Patent Counsel; Parise was a Roche Senior Counsel. After Torpharm had moved to dismiss the complaint for failure to state a claim upon which relief could be granted, Johnson and Parise telephoned Dr. Sherman, the Chairman of Torpharm. They introduced and identified themselves. Johnson stated that he wore "two hats" and was calling in his business capacity as a corporate officer to discuss resolution of the case to save further litigation costs. Johnson asked whether Dr. Sherman was willing to discuss resolution, and Dr. Sherman replied: "go ahead."

Johnson stated that if a confidential review of the process used to manufacture Torpharm's product showed that the process did not infringe the Syntex process patents, Roche would dismiss its suit. Parise asked whether a draft of a non-disclosure agreement should be sent to Dr. Sherman or to Torpharm's outside counsel; Dr. Sherman replied to send it to him. Johnson did so, and also sent a copy to Alan Bernstein, Torpharm's outside counsel in the case. Bernstein stated that when his office received the draft agreement, he was on vacation, and therefore could not review it before it was signed.

In returning one of the revised drafts of the non-disclosure agreement to Parise, Dr. Sherman added this handwritten note: "Question—shouldn't Roche pay Torpharm's legal costs?" Johnson and Parise called Dr. Sherman and told him that Roche would not do so, and that Torpharm had incurred those costs by refusing to cooperate with Roche's pre-filing inquiries.

After the non-disclosure agreement was executed—and it did not provide that Roche and Syntex would pay Torpharm's litigation expenses—Torpharm disclosed to Roche and Syntex the process by which its product was manufactured. Roche and Syntex concluded that the process did not infringe Syntex's process patents. In accordance with the agreement, they voluntarily dismissed their infringement suit.

B. After Roche and Syntex dismissed their case, Torpharm moved in the district court for the award of sanctions and attorney fees. Asserting that the suit was baseless and brought in bad faith, Torpharm asked the court to sanction Roche and Syntex for violation of Rule 11 of the Federal Rules of Civil Procedure and to award costs and attorney fees under 28 U.S.C. § 1927 and 35 U.S.C. § 285. They also contended that by dealing directly with Torpharm's chief executive in negotiating and effecting the settlement agreement, rather than dealing with the outside counsel who represented Torpharm in the case, Johnson and Parise violated New Jersey Rule of Professional Conduct 4.2, which deals with contacts between counsel representing a client and the opposing party.

The district court denied sanctions and attorney fees. *See Hoffman–La Roche,* 50 F.Supp.2d at 369. The court denied Rule 11 sanctions because, although Roche's and Syntex's "pre-filing inquiry with respect to defendant Torpharm was unsuccessful, it was reasonable. At the end of the plaintiffs' pre-suit investigation it had neither evidence of infringement nor non-infringement. Although plaintiffs could have assumed noninfringement at that point, that they chose to file suit and engage in discovery instead does not subject them to sanctions." *Id.* at 374. The court refused to find that this was an "exceptional case" under 35 U.S.C. § 285—a finding that under the statute is necessary for the award of attorney fees in patent litigation—because Torpharm had not met its "burden of establishing that this is an ex-

ceptional case.... Even if plaintiffs' presuit investigation was unreasonable, an unreasonable investigation alone does not demonstrate that the ensuing litigation was vexatious, unjustified, or brought in bad faith." *Id.* at 373.

The court rejected Torpharm's claim for attorney fees under 28 U.S.C. § 1927, which permits the award of such fees against an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously," *id.*, "[b]ecause Torpharm has made no showing that the plaintiffs multiplied this litigation in bad faith." *Hoffman–La Roche,* 50 F.Supp.2d at 373. In this appeal, Torpharm does not challenge that ruling.

Although the court summarized the parties' contentions on whether Johnson and Parise violated the New Jersey Rules of Professional Conduct, *see id.* at 371–72, it did not address the merits of the issue, but referred to it in passing in its ruling that attorney fees were not awardable under 28 U.S.C. § 1927, *see id.* at 373.

## II

▮ Rule 11 of the Federal Rules of Civil Procedure

> imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and "not interposed for any improper purpose." An attorney who signs the paper without such a substantiated belief "shall" be penalized by "an appropriate sanction." Such a sanction may, but need not, include payment of the other parties' expenses.

*Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 393, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). "[T]he central purpose of Rule 11 is to deter baseless filings in district court and thus ... streamline the administration and procedure of the federal courts." *Id.* "[A]n appellate court should apply an abuse-of-discretion standard in reviewing all aspects of a district court's Rule 11 determination. A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Id.* at 405, 110 S.Ct. 2447; *see also Rohm and Haas Co. v. Brotech Corp.,* 127 F.3d 1089, 1093, 44 USPQ2d 1459, 1463 (Fed.Cir.1997) (stating that this court reviews a district court's denial of "sanctions under Rule 11 for failure to conduct an adequate pre–filing investigation ... for an abuse of discretion").

▮ In denying Rule 11 sanctions, the district court ruled that Roche's and Syntex's "pre-filing inquiry with respect to defendant Torpharm ... was reasonable." The court did not abuse its discretion in so concluding.

When Roche and Syntex discovered that Torpharm had filed an Abbreviated New Drug Application covering a generic form of ticlopidine hydrochloride, their concern was that the manufacture of the product infringed their patents on the processes for making it. They attempted to ascertain whether the processes so used were infringing, but were unable to do so.

Torpharm refused to disclose the manufacturing processes because of a confidentiality agreement it had with the manufacturer. There was no indication, however, that it had unsuccessfully sought from the manufacturer authorization to disclose the process under a confidentiality agreement, as ultimately it did. Torpharm did provide Roche and Syntex with samples of its generic drug, but they could not determine by reverse engineering whether the drug had been manufactured by the patented processes.

Roche and Syntex then filed an infringement complaint against Torpharm and others that described the inquiry they had

made and explained the reason for bringing the suit. They stated, on information and belief, that they were "not aware of any analytical technique which can be used to definitely establish" that defendants' generic ticlopidine hydrochloride was made by the processes their patents covered; that "for that reason" they had "sought from ... them information as to its or its suppliers' process for the synthesis of that compound"; and that

> In the absence of such information, plaintiffs resort to the judicial process and the aid of discovery to obtain under appropriate judicial safeguards such information as is required to confirm their belief and to present to the Court evidence that each and every defendant infringes one or more claims of the Syntex Patents.

It is difficult to imagine what else Roche and Syntex could have done to obtain facts relating to Torpharm's alleged infringement of their process patents. Torpharm has pointed to nothing else that it believes they could or should have done. Its position apparently is that because they were unable to obtain and set forth in their complaint facts showing infringement, they should not have filed suit at all.

The district court correctly rejected that theory. As it stated, although Hoffman and Syntex "could have assumed non-infringement" when "[a]t the end of the plaintiff's pre-suit investigation it had neither evidence of infringement nor non-infringement ...," that they chose to file suit and engage in discovery instead does not subject them to sanctions." *Hoffman–La Roche*, 50 F.Supp.2d at 373. If Torpharm initially had told them, under a confidentiality agreement, the process used to manufacture the drug—as it subsequently did—it could have avoided this litigation and the expenses incurred in defending it.

In *Cambridge Prods. Ltd. v. Penn Nutrients Inc.*, 962 F.2d 1048, 22 USPQ2d 1577 (Fed.Cir.1992), this court rejected a similar claim for Rule 11 sanctions based on an allegedly inadequate pre-filing investigation. There, based on the defendant Penn's sale of a competing product, the plaintiff Cambridge filed suit charging infringement of its patent on the method of making the product. *See id.* at 1049, 962 F.2d 1048, 22 USPQ2d at 1578. Shortly before trial, however, Cambridge voluntarily dismissed its suit, based on a declaratory judgment of another district court. *See id.* Penn then moved for attorney fees under Rule 11 (and under 35 U.S.C. § 285). The district court denied the motion and this court affirmed. *See id.* at 1050, 962 F.2d 1048, 22 USPQ2d at 1579.

The defendant contended before this court that "although Cambridge performed an independent chemical analysis of its allegedly infringing product, Cambridge did not make any attempt to determine the method by which the 6BA liquid was made before the complaint was filed and that a simple phone call to Penn would have revealed that the method was not the same. As a result of this supposed failure to fully investigate before filing suit, Penn argues that Cambridge's attorney, in signing the complaint, answers to interrogatories and plaintiff's substantive response to Penn's motion for attorney fees, could not have reasonably believed its infringement allegations to be true at the time they were submitted and thus that the district court abused its discretion in denying Penn's motion for attorney fees." *Id.* In rejecting that contention, this court stated:

> The record contains evidence upon which the district court, "rationally could have based its decision" and Cambridge appears to have undertaken a reasonable pre-filing inquiry in preparing for and commencing this litigation. Cambridge had tested a sample of the allegedly infringing product and had commissioned further chemical analyses and acquired documentary evidence that

appeared to confirm that the product alleged to infringe fell within the chemical specifications of the patented method. Without the aid of discovery, any further information was not practicably obtainable. Thus, Cambridge met the Rule 11 standard for filing and maintaining its case.

*Id.*

The inquiry that Roche and Syntex made before filing their complaint was more extensive than the inquiry Cambridge made, which this court held was a reasonable one. Cambridge merely tested the allegedly infringing product and Penn contended that that inquiry was inadequate because "Cambridge did not make any attempt to determine the method by which the [allegedly infringing product] was made before the complaint was filed and that a simple phone call to Penn would have revealed that the method was not the same." *Id.* In the present case, in contrast, before filing their complaint Roche and Syntex asked Torpharm to disclose the method by which Torpharm's product was made, but Torpharm declined to do so.

■ "A district court's ruling that a litigant's position is factually well grounded and legally tenable for Rule 11 purposes is ... fact specific." *Cooter & Gell,* 496 U.S. at 403, 110 S.Ct. 2447. As in *Rohm and Haas, supra,* the district court here did not abuse its discretion in holding that, in the circumstance of this case, Roche's and Syntex's "initial claim of infringement was not unreasonable in light of the available information at the time of filing." 127 F.3d at 1093, 44 USPQ2d at 1463.

### III

■ Under 35 U.S.C. § 285, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party" in patent infringement litigation. The district court's determination whether a case is "exceptional" is a factual ruling, which we review for clear error. *See Beckman Instruments, Inc., v. LKB Produkter AB,* 892 F.2d 1547, 1551, 13 USPQ2d 1301, 1304 (Fed.Cir.1989). "Among the types of conduct which can form a basis for finding a case exceptional are willful infringement, inequitable conduct before the P.T.O., misconduct during litigation, vexatious or unjustified litigation, and frivolous suit. Such conduct must be supported by clear and convincing evidence." *Id.* (citations omitted); *see also Cambridge Prods.,* 962 F.2d at 1050–51, 22 USPQ2d at 1579 ("In the case of awards to prevailing accused infringers ... 'exceptional cases' are normally those of bad faith litigation or those involving fraud or inequitable conduct by the patentee in procuring the patent.").

The district court found that Torpharm had not met its "burden of establishing that this is an exceptional case," i.e., that the litigation Roche and Syntex instituted "was vexatious, unjustified, or brought in bad faith." *Hoffman–La Roche,* 50 F.Supp.2d at 373. That finding is not clearly erroneous and it requires affirmance of the district court's denial of attorney fees under section 285.

■ A. Torpharm contends that Roche and Syntex "knew or should have known that this action is frivolous." It notes that they voluntarily dismissed the suit after it had disclosed to them the manufacturing processes. It basically relies upon the same arguments it made in its Rule 11 claim, namely, that they had not made a reasonable pre-filing inquiry and therefore had instituted a frivolous suit.

Our rejection of the Rule 11 claim, i.e., our affirmance of the district court's ruling that Roche and Syntex made a reasonable pre-filing inquiry, also supports the district court's finding that this was not an exceptional case. Torpharm has not presented any facts showing that when Roche and

Syntex filed their complaint, they had reason to believe that their patents did not cover the processes used to make Torpharm's generic drug. "[Torpharm's] mere argument that [Roche's and Syntex's] ... claims were 'baseless' and pursued in 'bad faith' does not undermine the district court's conclusions to the contrary. The record evidence supports the district court's conclusion that [they] acted in good faith." *Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1461, 46 USPQ2d 1169, 1178 (Fed.Cir.1998) (en banc).

B. Torpharm also argues that by directly calling and negotiating a settlement with Torpharm's chairman, Dr. Sherman, instead of going through Torpharm's outside counsel, Johnson and Parise violated Rule 4.2 of the New Jersey Rules of Professional Conduct, which in pertinent part states:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows, or by the exercise of reasonable diligence should know, to be represented by another lawyer in the matter ... unless the lawyer has the consent of the other lawyer, or is authorized by law to do so, or unless the sole purpose of the communication is to ascertain whether the person is in fact represented.

The parties dispute whether Johnson's and Parise's direct contacts with Dr. Sherman violated Rule 4.2. Roche and Syntex contend that Johnson, who made the initial contact and primarily conducted the negotiations, was acting in his capacity as a Vice-President of Roche and not as Roche's counsel. The district court did not decide whether Johnson and Parise violated Rule 4.2, and neither do we.

■ The enforcement of Rule 4.2 is the function of the New Jersey state authorities that deal with lawyer misconduct and discipline; it is not the responsibility of the United States District Court.

CONCLUSION

The order of the district court denying Rule 11 sanctions and attorney fees is

*AFFIRMED.*