Alan WANER, Plaintiff–
Cross Appellant,

v.

FORD MOTOR COMPANY,
Defendant–Appellant.

Nos. 02–1184, 02–1185.

United States Court of Appeals,
Federal Circuit.

DECIDED: June 4, 2003.

Rehearing and Rehearing En Banc
Denied: July 11, 2003.

Robert Gusinsky, Lynn, Jackson, Shultz & Lebrun, P.C. of Rapid City, SD, argued for plaintiff-cross appellant. With him on the brief was Jay C. Shultz.

Ernie L. Brooks, Brooks & Kushman P.C. of Southfield, MI, argued for defendant-appellant. With him on the brief were Thomas A. Lewry and Michael S. Brodbine.

Before NEWMAN, Circuit Judge, ARCHER, Senior Circuit Judge, and MICHEL, Circuit Judge.

Opinion for the court filed by Senior Circuit Judge ARCHER. Dissenting opinion filed by Circuit Judge PAULINE NEWMAN.

## DECISION

ARCHER, Senior Circuit Judge.

Ford Motor Company (Ford) appeals the United States District Court for the District of South Dakota's order denying its motion for judgment as a matter of law that Ford does not infringe United States Patent No. 5,613,710 ('710 patent). *See Waner v. Ford Motor Co.*, No. 98–5061–KES (D.S.D. Nov. 30, 2001) (Order Denying JMOL). Ford also appeals the award of attorney fees to Waner. *See Waner v. Ford Motor Co.*, No. 98–5061–KES (D.S.D. Nov. 30, 2001) (Order Granting Attorney Fees). Alan Waner (Waner) cross-appeals the district courts partial summary judgment grant in favor of Ford on Waners unjust enrichment claim. *See Waner v. Ford Motor Co.*, No. 98–5061–KES (D.S.D. Apr. 4, 2001) (Partial Summary Judgment Order). We reverse the denial of Fords motion for JMOL on infringement; reverse the award of attorney fees to Waner; and affirm the denial on summary judgment.

## BACKGROUND

The '710 patent discloses a fender liner for dual rear wheel trucks, commonly called "dually trucks." Waner designed the claimed fender liner to try and avoid the "star-cracking problem." When driving on dirt and gravel roads, dually tires can pick up rocks which strike the inner surface of the fenders. This can cause cracking in the paint on the outer surface of epoxy-fiberglass fenders. Such cracks are in the form of a star and are often called "star cracks." Ford F–350 dually trucks had fender liners that protected the front and back of the fender but not the top. To remedy this problem, Waner in-

vented a metal liner retrofitted into the fender that protected the top of the fender from star cracks.

Waner sold his first pair of fender liners to Hotze Ford Motor of Salem, Illinois in October of 1994. Realizing that if one Ford dealer was interested in purchasing the fender liners, others might also be interested, Waner pursued the matter with Ford Motor Company and was ultimately given a contact in Detroit. In early 1995, Waner contacted MacIsaac, a Ford employee, and told him of "his commercial success so far," and, in response, MacIsaac told Waner to get his patent work in order. Waner proceeded to file his application for a patent and send samples to Ford as requested.

Waner also sold fender liners to several Ford dealers and set up an exhibit at a horse show in Springfield, Illinois where "he approached a lot of people" trying to sell them fender liners. During this time, MacIsaac advised Waner that he had been transferred to another division and referred Waner to another Ford employee. Eventually a meeting was set up between Waner and Karlen, a Ford engineer. The two men met for over an hour, and at the conclusion of the meeting, Karlen told Waner that he would present Waner's liner at an upcoming meeting. Eleven days later, Karlen prepared a "concern detail" describing the star crack problem and proposed adding a liner as the solution. About two weeks later, Karlen told Waner that the meeting had been postponed when it had actually taken place. Karlen then informed Waner that he was no longer at liberty to discuss the matter with Waner and referred him to Ford's attorneys. Ford installed over 45,000 pairs of top liners on the 1997 model year F–350 dually trucks. Prior to installation these liners were simply sheets of flat plastic.

Waner sued Ford for "usurpment of an idea"/unjust enrichment and infringement of the '710 patent. Before trial, the district court granted partial summary judgment in favor of Ford on Waner's unjust enrichment claim. The case was then tried to a jury which returned a verdict of infringement, and the trial court denied Ford's motion for JMOL on the infringement issue. The district court granted Waner's motion to make the case "exceptional" under 35 U.S.C. § 285 and awarded Waner attorney fees.

Ford appeals the denial of JMOL and award of attorney fees. Waner cross-appeals the trial court's partial summary judgment grant in favor of Ford on Waner's unjust enrichment claim. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

### Claim Construction

Claim construction is a question of law that this court reviews *de novo*. *See Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1456, 46 USPQ2d 1169, 1174 (Fed. Cir.1998) (en banc). Claims 1 and 4 recite the language at issue, and claim 1 is illustrative:

1. A fender liner for a dual wheel fender, said fender formed of epoxy-fiberglass and having a substantially flat top, an inboard and an outboard side, said fender mounted on angled brackets along the top of the fender on the inboard side of the fender to a rear quarter panel of a vehicle with bolts through the angled brackets, said fender liner comprising

*an elongated flat panel* formed of sheet material with *an inboard side flange, said flat panel* running substantially the length and the breadth of the flat top

and *suited to be installed* inside the fender along the flat top,

said fender liner adapted to be attached to the angled brackets along the inboard side flange of the fender liner by the bolts attaching the fender to the vehicle along the top of the fender

whereby the underside of the flat top of the fender is guarded against damage by rocks and other objects which may be hurled up against the flat top of the fender.

The district court interpreted "flange" to mean "the portion of a structure to either stiffen or attach it to another structure, not requiring the five-degree angle as described in the preferred embodiment, and not necessarily requiring any angles." *Waner v. Ford*, No. 98–5061–KES, slip op. at 10 (D.S.D Aug. 30, 2000) (Claim Construction Order). The court further found "that nothing in [claim 1], the specification, or the prosecution history requires that the flange exist prior to installation of the liner." We disagree with the district court's claim construction.

■ Claim construction begins with determining the ordinary and customary meaning, if any, that would be attributed to the term by those skilled in the art. *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342, 60 USPQ2d 1851, 1854 (Fed. Cir.2001). Dictionary definitions are useful in this process. *See Boehringer Ingelheim Vetmedica, Inc. v. Schering Plough Corp.*, 320 F.3d 1339, 1346, 65 USPQ2d 1961, 1965 (Fed.Cir.2003) (citing *Tex. Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1202–03, 64 USPQ2d 1812, 1818–19 (Fed.Cir.2002)). As this court has explained,

[b]y examining relevant dictionaries, encyclopedias and treatises to ascertain possible meanings that would have been attributed to the words of the claims by those skilled in the art, and by further utilizing the intrinsic record to select from those possible meanings the one or ones most consistent with the use of the words by the inventor, the full breadth of the limitations intended by the inventor will be more accurately determined and the improper importation of unintended limitations from the written description into the claims will be more easily avoided.

*Tex. Digital*, 308 F.3d at 1205, 64 USPQ2d at 1820.

■ In this case, the term "flange" is not given a specific meaning in the intrinsic record. However, a dictionary definition is readily available: "flange, n .... 1. a raised or projecting edge, rib, or rim for strength, as in a T-rail; for guidance, as on a rail to keep wheels in place; for connection with some other object, as in some pipes; 2. a tool for making flanges." *Webster's New Twentieth Century Dictionary, Unabridged* 696 (2d ed. 1962). The specification and drawings of the '710 patent demonstrate that definition 1 most adequately represents what the inventor intended to claim in his invention. For example, Figures 1–3 illustrate a raised or projecting edge or rim. Further, the patent states "inboard side flange 40 may be integral with flat panel 36 and stiffened by bending it back upon itself. Inboard side flange 40 is preferably at about a 5 degree angle to the plane within which flat panel 36 lies." *See* '710 patent, col. 2, l. 65–col. 3, l. 2. Similarly, when describing an outboard flange the patent explains that the flange runs the length of the panel and is angled downward from the plane of the flat panel. *See id.* at col. 3, ll. 8–12. There is nothing in the patent specification to indicate that the flange is coplanar with the flat panel. Accordingly, we construe the claim term "flange" to mean a raised or projecting edge.

■ The remaining claim construction dispute concerns whether the flange must exist prior to installation of the fender liner. The claim language itself makes clear that the flange must exist prior to installation. The pertinent part of claim 1 states "said fender liner comprising *an elongated flat panel formed of sheet material with an inboard side flange, said flat panel* running substantially the length and breadth of the flat top and *suited to be installed inside the fender* along the flat top." (emphases added). This claim limitation requires "*said* flat panel" be "suited to be installed inside the fender." What panel is "said flat panel"? It is the panel that is formed of sheet material and that has an inboard side flange. Thus, by saying "*said* flat panel," the claim mandates that the panel with the inboard side flange be suited to be installed inside the fender. In other words, the panel must have the inboard side flange prior to installation (that is, without being attached to the fender). The specification and drawings of the '710 patent further support this construction. Figure 2 illustrates a liner (10) having an elongated flat panel (36) with a flange *prior* to its installation in a fender. *See* col. 2, l. 47—col. 3, l. 13. Indeed, nothing in the specification or the drawings suggests the flange need not exist prior to installation.[1]

Waner argues that the claim language does not require that the flange exist prior to installation. Waner contends that the "suited to be installed language" refers to the flat panel and not the inboard side flange. However, as we just explained, there is nothing in the claim language, the specification, or the drawings which suggests this interpretation. We therefore find Waner's argument unpersuasive. Accordingly, we hold that the claimed in-

board side flange must exist as part of the fender liner prior to installation.

### JMOL of Infringement

■ JMOL may be granted when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Thomson, S.A. v. Quixote Corp.,* 166 F.3d 1172, 1174, 49 USPQ2d 1530, 1531 (Fed.Cir.1999) (quoting *Johns Hopkins Univ. v. Cellpro, Inc.,* 152 F.3d 1342, 1353, 47 USPQ2d 1705, 1713 (Fed.Cir.1998)); *Jones v. TEK Indus., Inc.,* 319 F.3d 355, 358 (8th Cir.2003). Our review of the district court's denial of Fords motion for JMOL is *de novo,* reapplying the JMOL standard. *See id.* Under this standard of review, we can reverse a denial of a motion for JMOL only if the jury's factual findings are not supported by substantial evidence or if the legal conclusions implied from the jury's verdict cannot in law be supported by those findings. *Id.; see also Cybor Corp.,* 138 F.3d at 1454, 46 USPQ2d at 1172; *Warren v. Prejean,* 301 F.3d 893, 900 (8th Cir.2002) (stating "a denial of a motion for JMOL will be reversed only when the evidence is susceptible to no reasonable interpretation supporting the verdict").

■ As explained above, the district court erred in its interpretation of the claim language. Under the proper claim construction, in order for Ford's fender liner to infringe, it must have an inboard side flange (a raised or projecting edge) prior to installation within the fender. Because Ford's fender liner is a single, planar sheet prior to installation, it does not have the elongated flat panel with an inboard side flange as claimed. Therefore, we conclude that no reasonable jury could have found that Ford's fender liner in-

---

1. We also note that while the claim language indicates the fender liner is *to be* installed, it need not be installed in a fender and therefore is a pure product claim.

fringed the '710 patent. Accordingly, we reverse the district court's denial of JMOL and hold, as a matter of law, that Ford's fender liner does not infringe the '710 patent.

*Unjust Enrichment*

■ Waner sought compensation for Ford's alleged usurpment of his fender liner idea prior to the issuance of a patent. Finding that "once Waner sold the fender liners on the market, his invention was published and in the public domain," the district court held that Waner had no protectable property interest in his fender liner and granted partial summary judgment in favor of Ford on Waner's unjust enrichment/usurpment of an idea claim. *Waner v. Ford Motor Co.*, No. 98–5061–KES, Partial Summary Judgment Order at 8. More specifically, the district court found

> [t]here is no dispute that Waner offered his fender liner for sale to Ford dealers and to the public at a horse show in Springfield, Illinois.... Waner has not alleged that there was any type of confidentiality agreement or confidential relationship with any of the individual dealers to whom he sold the fender liners and there clearly was no confidential relationship with the general public at the horse show. Once Waner sold the fender liners on the market, his invention was published and in the public domain. His invention was no longer secret.

*Id.* at 7.

■ Absent secrecy, state law cannot create a collateral set of rights available as an adjunct or expansion to patent rights. *See Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 149, 109 S.Ct. 971, 103 L.Ed.2d 118 (1989) (stating "[o]nce an inventor has decided to lift the veil of secrecy from his work, he must choose the protection of a federal patent or the dedication of his idea to the public at large"). The Supreme Court of South Dakota[2] recently grappled with this issue in *Daktronics v. McAfee*, 1999 SD 113, 599 N.W.2d 358 (1999), holding "[i]deas which are not novel and 'are in the public domain may freely be used by anyone with impunity.'" *Id.* at 364 (quoting *Murray v. Nat'l Broad. Co.*, 844 F.2d 988, 993 (2d Cir. 1988)). That case, like the present case, involved an idea (a product displaying speed and type of pitch thrown for the public to view at a ballpark) that was capitalized on by a company after the company was made aware of the idea by the person who apparently thought of it first. The South Dakota Supreme Court ruled that McAfee's unjust enrichment claim failed because there was no protectible property interest in the device, ostensibly because the device was not novel and was in the public domain. *See id.* Thus, if Waner's invention was in the public domain prior to issuance of the patent, he is not protected by state law.

Waner invites us to follow *Mack v. Mack*, 613 N.W.2d 64 (S.D.2000), and *Parker v. Western Dakota Insurors, Inc.*, 605 N.W.2d 181 (S.D.2000), which allow recovery on unjust enrichment claims. These cases, however, are inapposite. Unlike *Daktronics*, *Mack* and *Parker* do not deal with an idea or invention. The unjust enrichment claim in *Mack* revolved

**2.** In its Response Brief, Waner concedes that it had not raised the issue of choice of law below. Accordingly, that issue was waived and we must apply South Dakota law. We note that the dissent cites to *B & M Die Co. v. Ford Motor Co.*, 167 Mich.App. 176, 421 N.W.2d 620, 622 (1988). Were Michigan case law the applicable law here, this case could have a bearing on the result we reached. As noted, however, it is South Dakota case law that applies.

around a partnership arrangement gone bad and the question whether one partner should receive compensation for use of his share of the property by the partnership. His property was not an idea as here, but was instead physical objects, including machinery and inventory. In *Parker*, unjust enrichment was one of the theories of recovery claimed by a former employee to collect post-employment renewal commissions from her employer. Thus, neither of these cases remotely touches on the aspect of an idea or inventive concept which lies at the heart of the present case. Accordingly, we hold *Parker* and *Mack* to be inapplicable to this case and apply the teaching of *Daktronics* that ideas can only be protected under intellectual property law by the patent system.

Because there is no genuine issue of material fact that Waner's fender liner was introduced to and available to the public, we affirm the district court's grant of partial summary judgment on Waner's unjust enrichment claim in favor of Ford.

*Attorney Fees*

■ We review *de novo* whether the district court applied the proper legal standard under 35 U.S.C. § 285, and we review the court's factual findings, including whether the case is exceptional, for clear error. *See Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1186, 33 USPQ2d 1823, 1833 (Fed.Cir.1995). Under 35 U.S.C. § 285, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285 (2000). A "prevailing party may prove the existence of an exceptional case by showing: inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement." *Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1034, 61 USPQ2d 1470, 1479 (Fed.Cir.2002) (citing *Hoffmann–La Roche*

*Inc. v. Invamed Inc.*, 213 F.3d 1359, 1365, 54 USPQ2d 1846, 1850 (Fed.Cir.2000)). And "[l]itigation misconduct and unprofessional behavior are relevant to the award of attorney fees, and may suffice, by themselves, to make a case exceptional." *Id.* (citing *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1574, 38 USPQ2d 1551, 1557–58 (Fed.Cir.1996)).

■ The requirements for awarding attorney fees under 35 U.S.C. § 285 are that "(1) the case must be exceptional, (2) the district court may exercise its discretion, (3) the fees must be reasonable, and (4) the fees may be awarded only to the prevailing party." *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1480, 45 USPQ2d 1498, 1504 (Fed.Cir.1998) (quoting *Machinery Corp. of Am. v. Gullfiber AB*, 774 F.2d 467, 470, 227 USPQ 368, 371 (Fed.Cir.1985)). Here the district court found that Ford employed a "vexatious litigation strategy" and awarded Waner attorney fees under 35 U.S.C. § 285. Given that we affirm the trial court's grant of partial summary judgment in favor of Ford on Waner's unjust enrichment claim and our holding as a matter of law that Ford's fender liners do not infringe, we must vacate the trial court's award of attorney fees, because Waner does not meet requirement (4) above. Waner is no longer the prevailing party in the issue, and, as such, he is not entitled to receive attorney fees. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 & n. 7, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1933) ("[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.").

## CONCLUSION

For the foregoing reasons, the district court's grant of partial summary judgment

in favor of Ford on Waner's unjust enrichment claim is affirmed; its award of attorney fees to Waner is reversed; and its denial of Ford's JMOL motion of noninfringement is reversed.

AFFIRMED–IN–PART and RE-VERSED–IN–PART

No costs.

PAULINE NEWMAN, Circuit Judge, dissenting.

I respectfully part company with my colleagues on this panel as to the issues of infringement and unjust enrichment.

## I

On the question of infringement, after a thorough trial the jury found infringement and awarded a 12% royalty, upon the district court's construction of the claim to mean that the flange could be made in the fender liner during installation. Although the question is close, the judge correctly construed the claim and a reasonable jury could have found it infringed. With the requisite deference to the trial court and the verdict of the jury, I would affirm the judgment. See, e.g., Richardson v. Suzuki Motor Co., 868 F.2d 1226, 1235, 9 USPQ2d 1913, 1919 (Fed.Cir.1989) ("When the judgment arises from a jury verdict, the reviewing court applies the reasonable jury/substantial evidence standard....")

## II

Upon the panel majority's reversal of the judgment of infringement, it necessarily reaches the issue of unjust enrichment. However, the majority improperly converts the claim for unjust enrichment into one for theft of trade secrets, and then finds that Waner's proprietary design was not a trade secret. Indeed it was not, for it had been demonstrated publicly. However, it was still proprietary to Waner, and had been shown to Ford for the purpose of interesting Ford in buying it. Waner here asserts equitable rights against Ford, arising from Ford's unjust enrichment through their course of dealing.

A claim for unjust enrichment requires that one party is enriched at the expense of another and that it would be inequitable to permit the party that is enriched, through wrongdoing or breach of commercial ethics, to retain that benefit. See, e.g., Mack v. Mack, 613 N.W.2d 64, 69 (S.D. 2000) ("In order to establish unjust enrichment, three elements must be proven: (1) a benefit was received; (2) the recipient was cognizant of that benefit; and (3) the retention of the benefit without reimbursement would unjustly enrich the recipient."); B & M Die Co. v. Ford Motor Co., 167 Mich.App. 176, 421 N.W.2d 620, 622 (1988) ("The essential elements of such a claim [for unjust enrichment] are (1) receipt of a benefit by the defendant from the plaintiff, and (2) which benefit it is inequitable that the defendant retain.")[3] Under these circumstances, the plaintiff's right to compensation is based on a contract implied in law, not the infringement of intellectual property rights. See Mack, 613 N.W.2d at 69 ("When unjust enrich-

3. These actions are governed by state law, and although I have not considered whether the law of Michigan or South Dakota applies, the requirements for establishing unjust enrichment appear to be essentially the same in both states. Certainly the panel majority's assertion that Mr. Waner might have a cause of action under Michigan law, but not South Dakota law, is hard to square with its reliance on Bonito Boats, 489 U.S. 141, 109 S.Ct. 971, 103 L.Ed.2d 118, which should control equally in both states. Ford did not take this idea from "the public domain;" it took it from Mr. Waner, over a lengthy course of personal dealings that, on Mr. Waner's statement of the facts, were characterized by subterfuge and deception. South Dakota is not more tolerant of injustice than is Michigan.

ment is found, the law implies a contract, which requires the defendant to compensate the plaintiff for the value of the benefit conferred.")

Waner's complaint included a count for unjust enrichment, based on the actions of Ford in receiving his idea and his samples, telling him that they weren't interested, and then making and selling the product he offered them. It is irrelevant whether the fender liner can be classified as a trade secret, for it is undisputed that Ford's knowledge of it was only through Waner and the sample fender liners he left with them for evaluation. On the facts set forth in the complaint, the premises of a case of unjust enrichment have been made out. Thus summary judgment in favor of Ford was improperly granted. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.") (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)); *Stark v. Advanced Magnetics, Inc.,* 29 F.3d 1570, 1575–76, 31 USPQ2d 1290, 1294 (Fed.Cir. 1994) (in granting a motion for summary judgment, the non-movant's version of disputed facts must be accepted).

The rules of commerce, indeed the rule of law, are designed both to foster and to require good faith dealings. The courts are not obliged to condone facially unethical relationships by finding technicalities of law that favor the wrongdoer. *United States v. Milligan,* 17 F.3d 177, 184 (6th Cir.1994) ("This court, however, can not condone defrauding hospitals with policies sympathetic toward the uninsured."); *Save Barton Creek Assn. v. Federal Highway Admin.,* 950 F.2d 1129, 1144 (5th Cir.1992) ("This Court does not 'condone any form of subterfuge.' "); *In re Franklin,* 922 F.2d 536, 539 (9th Cir.1991) ("It would be wrong

to apply a bar of recovery against plaintiff based upon a statute relating to a transaction that was fraudulently induced. To do so would be to condone the fraud. The law cannot condone such a result and it doesn't."); *United States v. State of California,* 932 F.2d 1346, 1350 (9th Cir.1991) ("At the heart of an action based on quasi-contract lies a claim of unjust enrichment and such quasi-contract liability is dictated by the needs of justice and fairness.")

An industrial society can remain healthy only with rigorous enforcement of business ethics; and indeed this is the foundation of the common law of commerce. *Kewanee Oil Co. v. Bicron Corp.,* 416 U.S. 470, 481–82, 94 S.Ct. 1879, 40 L.Ed.2d 315 (1974) (" 'The necessity of good faith and honest, fair dealing, is the very life and spirit of the commercial world.' ") (quoting *National Tube Co. v. Eastern Tube Co.,* 3 Ohio C.C. (N.S.) 459, 462 1902 WL 874(Ohio 5th Cir.1902)); *Burten v. Milton Bradley Co.,* 763 F.2d 461, 467, 226 USPQ 605, 610 (1st Cir.1985) ("Fundamental to this, we believe, is the expectation by the parties that, absent an explicit waiver, the exchange of ideas will take place in trust and confidence. Were this not the case, we are hard pressed to understand why experienced and informed inventors would submit their ideas for consideration and thereby waive all rights to compensation for their labor.")

The facts as set forth in the majority opinion do not reflect well on the Ford Motor Company. Mr. Waner offered to sell them his idea for fender liners; they were interested; they then told him they were not interested, and proceeded to take his idea and place its embodiment on their vehicles. These facts must be accepted as true for the purposes of summary judgment. Any exculpatory circumstances have not been developed, for the record before us shows simply that Ford took

Waner's idea for fender liners, after receiving and evaluating his sample products, and refused to pay for this benefit. If there are mitigating facts favoring Ford (for example, if Ford had already designed and was planning to introduce a similar fender liner, or if Waner had signed a disclaimer of all rights other than patent rights) they do not show on this record. It may be that there are exculpatory circumstances, but that is not the question before us, where the cause was summarily dismissed. This is not a case of simply copying an item in the public domain, as in *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,* 489 U.S. 141, 109 S.Ct. 971, 103 L.Ed.2d 118 (1989), on which the panel majority inaptly relies.

A cause of action for unjust enrichment does not require that the thing taken was a trade secret. *See Restatement, Restitution* § 1 cmt. b ("A person confers a benefit upon another if he gives to the other possession or some other interest in money, land, chattels, or chooses in action, performs services beneficial to or at the request of the other, satisfies a debt or a duty of the other, or in any way adds to the other's security or advantage.") For example, in *B & M Die Co.* the technical information upon which the unjust enrichment claim was based was not a trade secret under Michigan law, yet the trial court permitted the unjust enrichment claim to go forward and the appellate court described the two causes of action as separate and distinct. *B & M Die Co.,* 421 N.W.2d at 623 ("As Ford indicates, plaintiff's technical information was not a 'trade secret' under Michigan law. However, the jury could properly consider under a claim of unjust enrichment the value of the benefit received by Ford as a result of having this technical information.") (citing *Manos v. Melton,* 358 Mich. 500, 100 N.W.2d 235 (1960)).

The issue before us is not who would prevail when all the evidence is presented. The issue is whether Waner's complaint for unjust enrichment should be thrown out on the pleadings. The majority achieves this result by first recasting the complaint as one for theft of trade secrets, and then holding that since this idea was not guarded as a trade secret (because the fender liners were publicly demonstrated by Waner, and because he told Ford about them in order to interest Ford in buying them) Waner cannot recover on trade secret theory. On this threshold premise the majority errs, for, as I have stated, the cause of unjust enrichment is not limited to theft of a trade secret.