# United States Court of Appeals
## For the First Circuit

Nos. 07-2615, 07-2616

MASSACHUSETTS EYE AND EAR INFIRMARY,

Plaintiff/Counterclaim Defendant-Appellee/Cross-Appellant,

v.

QLT PHOTOTHERAPEUTICS, INC.,

Defendant.

QLT, INC.,

Counterclaim Plaintiff, Appellant/Cross-Appellee,

v.

MASSACHUSETTS EYE AND EAR INFIRMARY;
EVANGELOS S. GRAGOUDAS, M.D.; JOAN W. MILLER, M.D.,

Counterclaim Defendants, Appellees/Cross-Appellants.

Before
Howard, Baldock[1] and Selya,
<u>Circuit Judges</u>.

**ORDER OF COURT**
**Entered: February 23, 2009**

QLT has filed a petition for rehearing of our decision in this case. One substantive issue presented in that petition warrants elaboration. QLT highlights an objection to the confidential information theory of unjust enrichment raised in its brief and addressed implicitly in our prior decision. Specifically, QLT argues that the voluminous evidence of its unfair

---

[1] Of the Tenth Circuit, sitting by designation.

behavior and repeated promises of compensation in exchange for MEEI's confidential information, introduced at trial and recited in our opinion, cannot support the conclusion that QLT profited from the use of MEEI's confidential information. Absent such a showing, QLT argues that the general principle that those who chose to make their work public must rely exclusively on patent law for protection of their work, Bonito Boats, Inc. v. Thunder Boats, Inc., 489 U.S. 141, 149 (1989), requires judgment in favor of QLT with respect to this theory. In making this argument, QLT concedes -- as it must -- that it is liable in unjust enrichment for any information it obtained and profited from as a result of its confidential relationship with MEEI and its researchers. Univ. of Colo. Found., Inc., v. Am. Cyanamid, Co., 342 F.3d 1298, 1306-07 (Fed. Cir. 2003); see also Bonito Boats, Inc., 489 U.S. at 155 (citing Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470 (1974)); Russo v. Ballrad Medical Products, 550 F.3d 1004 (10th Cir. 2008). Thus, QLT has done nothing more than pour its old sufficiency of the evidence challenge into a new bottle.

Despite this emphasis on preemption, QLT's argument remains unavailing. There was evidence that QLT initiated its communications with CIBA with a confidential abstract that was submitted for publication but not yet published. There was further evidence that QLT was in difficult financial straights and therefore was eagerly seeking a partner, and that QLT was competing against CIBA's internally-developed competitor to BPD. In addition, there was evidence that QLT needed Dr. Miller's assent to disclose all of her research results to CIBA Vision, some of which were published in March 1994, some of which were disclosed at a subsequent presentation, and some of which were never disclosed. The jury heard further evidence that both QLT and CIBA Vision were aware of Dr. Miller's publication and scheduled presentation, but that CIBA nevertheless felt expeditious access to Dr. Miller and all of her research results was "essential" to evaluating BPD. Indeed, even after Dr. Miller's public disclosures of portions of her work, CIBA continued to press for access to all of Dr. Miller's as-yet undisclosed work. Finally, the jury heard evidence of Dr. Miller's concerns that she and MEEI be compensated fairly for her research and QLT's repeated promises to pay such compensation in exchange for Dr. Miller's personal involvement and her permission expeditiously to disclose her research results.[2] From this evidence, a reasonable fact-finder could conclude that QLT unfairly

---

[2] QLT's argument that information disclosed subsequent to the publication and conference was valueless is a difficult one to make, in view of the fact that QLT made repeated offers of compensation to obtain such information. Although those promises are not enforceable, the very fact that the promises were made is demonstrative of the value that QLT placed on receiving Dr. Miller's cooperation in disclosing this additional information.

used MEEI's confidential information at MEEI's expense and that QLT's use of MEEI's confidential information was a substantial causal factor in the QLT-CIBA partnership.

Neither Bonito Boats, nor the other precedents on which QLT relies preclude recovery once such a conclusion is established. QLT's liability stems from its exploitation of information that it obtained in confidence, pursuant to a confidential disclosure agreement, and received permission to disclose through offers of compensation -- not from published articles or presentations at ophthalmology conferences. Thus, QLT's liability flows from its less than savory business practices rather than its reliance on public domain sources of information. This is not the stuff of preemption. See Kewanee Oil Co., 416 U.S. at 480-81 (declining to find Ohio trade secrets statute preempted because, inter alia, "[t]he necessity of good faith and honest, fair dealing is the very life and spirit of the commercial world") (internal quotation omitted); see also Bonito Boats Inc., 489 U.S. at 155-56 (reaffirming authority of states to regulate use of intellectual property not inconsistent with federal law); Confold Pacific, Inc. v. Polaris Industries, Inc., 433 F.3d 952, 956, 959-960 (7th Cir. 2006) (finding no unjust enrichment based on misuse of confidential information where Wisconsin law did not permit such a cause of action, and plaintiff failed to plead unfair competition or secret misappropriation under Wisconsin law); Waner v. Ford Motor Co., 331 F.3d 851, 856 (Fed. Cir. 2003) (finding dismissal of unjust enrichment claim appropriate where information was not trade secret and defendant was under no obligation to maintain confidentiality). Indeed, the Supreme Court has suggested that states should continue to regulate just these sorts of less-than-upright business practices, even if they incidently involve intellectual property and information that may be subject to federal patent laws.[3] See Bonito Boats, 489 U.S. at 156 (citing Aronson v. Quick Point Pencil Co., 440 U.S. 257, 262 (1979)).

Accordingly, with this clarification of our decision, QLT's

---

[3] In order to find preemption, the Supreme Court evaluates a state law on three dimensions: (1) whether it hinders the federal objective of providing an incentive to invent, (2) whether it inhibits full disclosure of inventions, and (3) whether it removes from the public domain that which the states lack the authority to remove. Kewannee Oil Co., 416 U.S. at 480-82; 6 Donald S. Chisum, Chisum on Patents, § 19.03[6][l], at 19-416 (2007). Where, as here, the inventors eventually sought protection of patent law, QLT and CIBA were free to exploit any of Dr. Miller's published research after it became freely available, if they so chose, and Dr. Miller's research was eventually published, the concerns that might lead the Supreme Court to find preemption are not sufficiently implicated to preempt the Massachusetts unjust enrichment cause of action, as it applies to this case.

petition for rehearing is denied.

By the Court:

<u>/s/ Richard Cushing Donovan, Clerk</u>

cc: Hon. William G. Young, Ms. Sarah Thornton, Clerk, United States District Court for the District of Massachusetts, Ms. Davison, Mr. Ware, Mr. Cushing, Mr. Donovan, Ms. Fiacco, Mr. Ridings, Ms. Sereny, Mr. Chun, Mr. Helmer, Mr. Maffei, Mr. Herman, Mr. Richlin, Mr. McKelvie, Mr. Baker, Mr. Harnett, Ms. DeFranco, Ms. Metzger-Hare, Mr. Flattmann, Mr. Bone, Mr. Buford, Mr. Haley, Ms. Cooleybeck, Mr. Bromberg, Mr. Biddinger, Ms. Mangasarian, Mr. Schwartz, Mr. Taranto, Mr. Ainsworth & Mr. Panner.